UNITED STATES

v.

**Staff Sergeant Willard W. MANN, FR 240–94–3969 United States Air Force.**

**ACM 24786.**

U.S. Air Force Court of Military Review.

3 Dec. 1985.

Appellate Counsel for the Accused: Mr. Norman A. Share, Homestead, Florida, Colonel Leo L. Sergi, Major Kathleen G. O'Reilly and Captain Deborah J. Hudspeth.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert, Colonel Andrew J. Adams, Jr., and Major David F. Barton.

Before FORAY, MURDOCK and O'HAIR, Appellate Military Judges.

## DECISION

O'HAIR, Judge:

Following his trial by general court-martial, the appellant was found guilty of three specifications of committing indecent acts, and one specification of sodomy, upon his nine year old daughter, A.L.M. He was found not guilty of a specification alleging he committed indecent acts upon another younger daughter and a specification alleging he unlawfully struck his wife.

Very briefly stated, the accused was convicted of committing the following misconduct: 1) between 4 April 1983 and 19 March 1984, an indecent assault upon A.L.M. by removing her pants and underpants, tying her to a chair, and attempting to insert an electrical, artificial penis into her vagina; 2) between 4 April 1983 and 19 March 1984, an indecent assault upon A.L.M. by applying vaseline to a thermometer and inserting it into her vagina; 3) on divers occasions, between 13 December 1982 and 19 March 1984, indecent assaults upon A.L.M. by inserting his finger into her vagina; and 4) between 4 April 1983 and 19 March 1984, sodomy upon A.L.M.

## I

All of the offenses heard by the court-martial were alleged to have occurred on Homestead Air Force Base, Florida, with the exception of Specification 3 of Charge I, which alleges the accused did, "in Dade County and Homestead Air Force Base, Florida," on divers occasions, insert his finger into her vagina.[1] In the first assignment of error, appellant avers the court-martial lacked subject-matter jurisdiction over that portion of the specification alleging indecent acts which occurred off-base in Dade County, Florida.

In every instance of off-base, criminal misconduct within the United States, the court-martial has no jurisdiction to hear the case unless there is a service connection between the misconduct and the interests of the Armed Forces to prosecute the offender. See R.C.M. 203 and the discussion which follows. This requirement for a finding of the presence of a service connection was first developed in *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). As a result, jurisdiction determining factors must be set out for the military judge on the charge sheet and incorporated in his findings. A vague recitation of the "Jurisdictional Basis" on the charge sheet will not suffice. See R.C.M. 307(c) Discussion (F). Additional facts to support a conclusion there is military jurisdiction in a given case can also be presented at trial in the form of testimony and stipulations. Furthermore, the issue of subject-matter jurisdiction over off-base misconduct cannot be waived, even if it is not raised at trial. R.C.M. 905(e).

Once the facts are before a court-martial, the military judge must evaluate them and make findings regarding the existence of subject-matter jurisdiction, a subject which has evolved since such landmark decisions as *O'Callahan, supra, Schlesinger, Relford, Murray v. Haldeman, Lockwood,* and *Trottier.*[2] The common theme of these

---

1. Upon his arrival at Homestead Air Force Base, appellant and his family resided in off-base civilian quarters in Homestead, Dade County, Florida, from June, 1982 until 1 April 1983, at which time he and his family began occupying on-base government quarters.

2. *Schlesinger v. Councilman,* 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *Murray v. Haldeman,* 16 M.J. 74 (C.M.A.1983); *United States v. Lockwood,* 15 M.J. 1 (C.M.A.1983); *United States v. Trottier,* 9 M.J. 337 (C.M.A.1980).

decisions is that there must be a finding of service connection arising from an off-base offense before subject-matter jurisdiction will exist. In *Lockwood, supra,* the Court of Military Appeals affirmed the exercise of jurisdiction for off-base offenses of forgery and larceny, relying heavily on such intangible considerations as the impact these offenses had on the personnel of the base where the accused was stationed, and the "morale, reputation and integrity of the base itself." This standard has been recently applied by this Court in *United States v. Benedict,* 20 M.J. 939 (A.F.C.M.R. 1985), a case involving an officer who committed off-base indecent acts with a ten year old girl who was neither his daughter nor a member of his household. There, the facts indicated the victim's parents were both NCO's and this incident greatly lessened the respect they had for the appellant as an officer. The parents also required time off from work to obtain counselling for the victim. The case was initially investigated by a civilian agency but both the base and civilian authorities concluded it would be in the best interests of the child and the community if the military took jurisdiction.

■ Examining the facts of the case before us, those found both in the pleadings and in the evidence before the court, we find that the bulk of the misconduct occurred on a military reservation, whereas a lesser amount occurred in off-base quarters and continued after the accused and his family moved on base; the misconduct was reported to a civilian law enforcement agency, but was later referred to the Air Force Office of Special Investigations for a detailed investigation of the allegations; the victim was initially examined in a civilian medical facility; and at the time of trial she was in the midst of receiving long-term rehabilitative counselling from a civilian psychotherapist. As was emphasized by appellate government counsel, these contacts with civilians certainly resulted in a tarnishing of the reputation and image of the Armed Forces. Furthermore, the interests of judicial economy, the desire to dispose of the alleged offenses expeditiously,

and the concern for the welfare of the victim, A.L.M., were best served by trying all offenses in the same forum. We may also infer from appellant's failure to object to the court's jurisdiction that he preferred to have all charges heard by this court-martial. *Lockwood, supra.* Based on the above, we find the court appropriately exercised subject-matter jurisdiction over appellant's off-base indecent acts with A.L.M.

## II

During the findings portion of the trial, over defense objection, trial counsel presented the court members with three magazines, as well as testimonial evidence of uncharged misconduct. Appellant now asserts the military judge abused his discretion by allowing such materials into evidence.

■ The appellant's wife found the three magazines in his tool box which was locked and kept in a storage shed at their on-base quarters. In addition to the magazines, the tool box also contained an electric artificial penis, a jar of vaseline, some balloons, and some women's panties. His wife had never seen any of these items before. Appellant admitted he had purchased the artificial penis some time ago as a gag gift for some friends, but was too embarrassed to give it to them; and he had purchased the magazines several years ago as well. One of the magazines is categorized as a sex education manual for parents with small children. Appellant asserts it has no probative value and is inadmissible under Mil.R.Evid. 402. The appellant says the other two magazines are not relevant because they do not show sexually explicit pictures of children, but only contain pictures of grown men and women. He concludes they are offered only to show he is a bad man and that this purpose is in contravention of Mil.R.Evid. 404(b).

The government's theory of admissibility, and the essence of the instruction given to the court members, was that all three magazines could be considered for their tendency, if any, to prove that the alleged

acts of indecent assault (Charge I) were done with the intent to arouse the lust and sexual desires of the appellant, which was one of the elements of those offenses. The government cites *United States v. Woodyard*, 16 M.J. 715, (A.F.C.M.R.1983), *pet. denied* 17 M.J. 204 (C.M.A.1983), for its authority. In *Woodyard* this Court permitted the introduction of homosexual magazines in the possession of Woodyard at a time when he attempted to perform oral sodomy on his male roommate. The theory for admissibility was that the magazines were highly probative of his intent. We believe that same theory is applicable here.

The first of the magazines offered by the government in this case was labeled as a sex education manual and, as found by the military judge:

> It depicts people from birth to adulthood, young children nude of opposite sex together not in suggestive poses, a young boy holding an erect penis, a father naked playing with his youngish naked daughter, a young boy with an erection touching the small breasts of a young, but older female, and a young girl fondling the penis of a younger male, and etcetera.

As described by the military judge, the manual contains approximately 140 pages of photographs of naked children and adults. In some poses, the adult models are engaging in sexual activities while the children are apparently watching. The other two magazines "depict young ladies having reached puberty in various poses with at times sexual aids, some nonelectric, others apparently of the electric type. Most of these young girls appear developed, with breast development and pubic hair. None appear to be non-teenagers." This Court would further note that in most of the photographs the young ladies are either using a sexual device, or have one or more fingers inserted in their vaginas.

The real issue at stake here is whether the government's evidence is relevant to the purpose for which it was offered, and that was to show appellant's intent at the time he committed the alleged acts. Relevant evidence, as defined in Mil.R.Evid. 401, is "any evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Applying this standard, we find the magazines meet this test. All three exhibits would seem to appeal to a reader who is interested in viewing naked children and young, teenage girls who are masturbating with either their fingers or electric and nonelectric sexual devices. This relevancy argument is stronger with respect to the magazines than it is to the publication labeled as a sex education manual. However, the relevance of the manual is enhanced by virtue of the fact it was found in the tool chest with the other magazines, the electric artificial penis, the jar of vaseline, and other items. A.L.M. was shown the electric penis and jar of vaseline and was able to identify both items as ones which were used by appellant to perpetrate the offenses. We find that all three exhibits are relevant and admissible in that they tend to show that appellant's indecent acts with his daughter were motivated by his desire to arouse his lust and sexual desires.

■ Appellant also argues that the magazines are not admissible under *Woodyard*, *supra*, because they were not found at the scenes of the indecent acts, but rather, in a locked tool box in their quarter's storage shed. There is no evidence the magazines were in the room with appellant when he committed the acts on A.L.M., but he admitted they had been acquired previous to the time of the alleged offenses. The absence of any evidence they were in the room with appellant when he was committing the offenses does not detract from or diminish their ability to be considered on the issue of appellant's intent. Therefore we find they were properly admitted into evidence.

■ The uncharged misconduct evidence appeared in the form of testimony by M.M., the eleven year old adopted son of appellant, and half-brother of A.L.M. Following defense objection, M.M. was permitted to

testify that four or five years ago, while the family was living in Alaska, appellant committed several sex offenses on M.M. At the time of these offenses M.M. was seven years old and his mother was out of the house. One of the offenses was that, on one occasion, appellant sucked M.M.'s penis. The other offenses were that, on approximately four occasions, appellant took M.M. and A.L.M. into the bathroom. With both of them naked, he would have M.M. lay on A.L.M. and attempt to place M.M.'s penis into her vagina. A.L.M. variously testified, either these events did not happen, or she does not remember them happening. The government's theory of admissibility was that the acts were evidence of a common scheme or plan. Mil.R. Evid. 404(b). Appellant objected that these acts were not "close enough in time, place and circumstances to be relevant," and further, they were not plain, clear and conclusive in light of A.L.M.'s failure to corroborate M.M.'s testimony. We agree with appellant on both points and find the military judge abused his discretion in admitting the testimony of M.M.

■ Having found error, we must now test for prejudice. Error not of constitutional dimension may be found harmless only upon the determination either that the finder of fact was not influenced by it, or that the error had but a slight effect on the resolution of the issues of the case. *See United States v. Barnes,* 8 M.J. 115 (C.M.A.1979); *United States v. Mendoza,* 18 M.J. 576 (A.F.C.M.R.1984). In the case before us we find the government presented sufficient, credible evidence in the form of testimony from A.L.M., her mother, and medical personnel, as well as physical evidence discovered in appellant's tool chest, to convince us of appellant's guilt beyond a reasonable doubt. In light of this, we find the inadmissible evidence had a minimal impact, if any, on the resolution of the issues of this case. Thus, we find the military judge's admission of M.M.'s testimony regarding uncharged misconduct was harmless error.

We have examined the remaining assignments of error and find them to be without merit. Accordingly, the findings of guilty and the sentence are

AFFIRMED.

FORAY, Senior Judge, concurs.

MURDOCK, Judge, concurring in result.

I agree that there was jurisdiction to try this case by court-martial and that the uncharged misconduct was improperly admitted. I cannot agree, however, that the three sexually oriented magazines were admissible.

An inherent difficulty in dealing with sexual topics in legal opinions is that in our culture sexual topics are generally considered to be private. Discussion of sex is only partly emerging from the taboos and inhibitions that kept the subject from being considered fully and honestly in the past. The moral overtones associated with sexual topics may make it difficult for court-martial panels to be guided only by legal considerations when they are deliberating on a sex offense.

The magazines involved in this case should be admissible only if they can be related to the charged offenses. R.C.M. 402. The military judge admitted them as some indication that the appellant's intent in abusing his children was to satisfy his own lust and sexual desire. In my opinion they demonstrate only that the appellant was interested in sexual topics, and not that he had a preference for sexual activities with children.

Two of the publications involved in this case could be described as "girlie magazines." They present women in startling and crude poses. Because of this, there may be a tendency to dismiss those who possess them as perverted and capable of any bad sexual act. This same faulty logic would be used to argue that possession of car magazines would support a proof of intent to steal a car. Evidence rules governing admissibility are designed to protect against this type of loose connection between the evidence and the charges. *See*

Mil.R.Evid. 403 and 404. Despite their overall crude contents, these magazines contain no pictures or articles which appear to be aimed at arousing prurient interest in activities with children. In fact, to state, as both the trial judge and the majority have, that the models are teenagers seems to be a kind exaggeration. Many of them appear to be significantly older than that. In any case, they are not grade school children, as was the victim in this case. Many of the pictures in these magazines are of adult women using sex aids similar to the one the appellant used on his daughter. This should not render the magazines admissible any more than pictures showing guns should, by themselves, render a magazine admissible on a murder charge.

The other publication is a sex education manual. It treats its subject in a frank and almost confrontational way that may offend some readers. It does not show or suggest to me, however, any of the illegal acts with children of which the appellant is charged.

All these publications were found hidden in the appellant's toolbox along with the items the appellant used to abuse his daughter. This secrecy does not enhance their relevance. It is obvious the appellant wanted to keep the magazines private. It is impossible to determine much more about the appellant's purpose for having the magazines. It takes more than mere position to make an item relevant, it must relate in some way to the charges being tried. Mil.R.Evid. 401.

Like the majority, I turn to *United States v. Woodyard*, 16 M.J. 715 (A.F.C.M. R.1983) for guidance. Unlike the majority, I conclude that it was the direct relationship between the homosexual materials Woodyard was found with and the attempted homosexual assault with which he was charged that rendered the materials admissible. I do not find that same congruence between this appellant's charges and the magazines which are the subject of this appeal. I would find them inadmissible as being irrelevant, however, since the other evidence of the appellant's guilt was so extensive, I would find the error harmless and affirm.