UNITED STATES, Appellee,

v.

Roy I. MONTESINOS, Specialist Four,
U.S. Army, Appellant.

No. 48,602.
SPCM 18720.

U.S. Court of Military Appeals.

March 14, 1989.

For Appellant: *Captain Brian D. Di-Giacomo* (argued); *Lieutenant Colonel Charles A. Zimmerman, Lieutenant Colonel Russell S. Estey, Captain Stephanie C. Spahn, Captain Keith W. Sickendick* (on brief); *Major Eric T. Franzen.*

For Appellee: *Captain Marcus A. Brinks* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Captain Carlton L. Jackson* (on brief); *Major Gary L. Hausken* and *Captain Thomas L. Herrington.*

### Opinion of the Court

EVERETT, Chief Judge:

On August 25, 1982, a special court-martial composed of officers and sitting in the Federal Republic of Germany, tried Montesinos on a charge that he had stolen $1,900 worth of personal property, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921. He pleaded guilty and was sentenced to a bad-conduct discharge, confinement and forfeiture of $367 pay per month for 6 months, and reduction to Private E-1. Pursuant to a pretrial agreement, the convening authority, Major General Anderson, approved the sentence but suspended the confinement in excess of 3 months and the forfeitures in excess of $300 pay per month for 3 months.

Initially, the findings of guilty and the sentence were affirmed by the Court of Military Review in an unpublished opinion on October 26, 1983. However, in the supplement to his petition to this Court, Montesinos, for the first time, raised the question of command influence; and, upon motion by the Government, we remanded the case to the Court of Military Review for further review on March 1, 1984.

That court on December 24, 1985, returned the record of trial to the Judge Advocate General of the Army "for submission to a different convening authority who will order a limited evidentiary hearing." 21 MJ 679, 683 (1985). At that hearing, the military judge would "receive evidence and make findings of fact on" five questions specified by the court. The court also directed that,

[a]fter the military judge has heard the evidence and made findings of fact, the record of the proceedings will be returned to this court for our consideration of the command influence issue. Alternatively, if the convening authority determines that such a hearing is impracticable, he may order a rehearing on sentence.

21 MJ at 683. In its decision on remand, the Court of Military Review did not purport to set aside either the findings of guilty or the sentence, which had been previously affirmed by that court.

Montesinos, who earlier had been placed on excess leave, was ordered to a duty status at Fort Leavenworth, Kansas. On June 25, 1986, the staff judge advocate at that post concluded that a limited evidentiary hearing was "impracticable"; and so he recommended that the convening authority "set aside the sentence and order a rehearing as to sentence based on the affirmed findings." The convening authority then directed that this case "be referred to a special court-martial empowered to adjudge a bad-conduct discharge."

On July 1, 1986, Montesinos submitted a request that he be discharged for the good of the service pursuant to Chapter 10, Army Regulation 635–200, Personnel Separations–Enlisted Personnel (July 5, 1984). Six days later, his duty status was rescinded, and he was placed on leave again.

On August 15, 1986, "[the] staff judge advocate recommended that the convening authority withdraw the case and *set aside the findings of guilty and the sentence* with a view toward approving the request for discharge under the provisions of Chapter 10." That "same day . . . the convening

authority approved the request for discharge and directed the issuance of an Other Than Honorable Discharge Certificate." Ten days later, "the convening authority determined that a sentence rehearing was no longer practicable, dismissed the charges, and set aside the findings of guilty and the sentence." Thereupon, "[the] record of trial and all the related documents were ... returned to" the Court of Military Review, 24 MJ 682, 684 (ACMR 1987), which then specified issues as to the validity of the action taken by the convening authority and the action that should be taken by the Court of Military Review. *Id.* After that court had specified the issues and appellant had responded thereto, he submitted a motion to withdraw the case from appellate review pursuant to RCM 1110, Manual for Courts–Martial, United States, 1984.

In an opinion dated May 14, 1987, written by Senior Judge Felder and concurred in by Judge Robblee, the court held that dismissal of the charges by the convening authority was void, because it exceeded the scope of the remand. Therefore, the dismissal was set aside; and "[t]he findings of guilty" were "again affirmed." "Based on the entire record, the court affirm[ed] a sentence of no punishment." 24 MJ at 686. Since the Court of Military Review did "not want to preclude appellant's right to petition the Court of Military Appeals for review of our decision in this case," it "den[ied] the motion to withdraw the case from appellate review without prejudice to appellant's right to resubmit the motion at a later date. R.C.M. 1110(g)(3)." 24 MJ at 686 n. 6.

Subsequently, we granted appellant's petition for review on this issue:

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED BY DENYING APPELLANT THE RIGHT TO WITHDRAW HIS CASE FROM APPELLATE REVIEW PURSUANT TO ARTICLE 61, UNIFORM CODE OF MILITARY JUSTICE, AND MANUAL FOR COURTS–MARTIAL, UNITED STATES, 1984, RULE FOR COURTS–MARTIAL 1110.

A

In order to answer the granted issue, we must initially consider the status of the case when Montesinos filed his waiver of appellate review. This, in turn, requires examination of the validity of the convening authority's action.

Prior to August 1, 1984, in a case where a special court-martial had adjudged a bad-conduct discharge, the record of trial was acted on initially by the convening authority and then, after receipt of a "written opinion thereon" from "his staff judge advocate or legal officer," was acted on by the officer exercising general court-martial jurisdiction over the command to which the accused was assigned. *See* Arts. 60, 61, 64, and 65, UCMJ, 10 USC §§ 860, 861, 864, and 865, respectively. Effective August 1, 1984, the Uniform Code was amended to provide that only the convening authority would act on the record, even when a special court-martial had adjudged a bad-conduct discharge, and only a "written recommendation" of the staff judge advocate or legal officer would be necessary. *See* Art. 60. As another part of an intended simplification and expedition of appellate review, Congress at the same time empowered the convening authority "to modify the findings and sentence of a court-martial" as "a matter of command prerogative involving ... [his] sole discretion." Art. 60(c)(1).

According to RCM 1107(f)(2)—which was intended to implement the amendments to the Code and which also took effect on August 1, 1984—

The convening authority may recall and modify any action taken by that convening authority at any time before it has been published or before the accused has been officially notified. In addition, in any special court-martial not involving a bad-conduct discharge or any summary court-martial, the convening authority may recall and correct an illegal, erroneous, incomplete, or ambiguous action at any time before completion of review un-

der R.C.M. 1112, as long as the correction does not result in action less favorable to the accused than the earlier action. When so directed by a higher reviewing authority or the Judge Advocate General, the convening authority shall modify any incomplete, ambiguous, void, or inaccurate action noted in review of the record of trial under Article 64, 66, or 67, or examination of the record of trial under Article 69. The convening authority shall personally sign any supplementary or corrective action.

■■■ The plain meaning of this language is that, in a case subject to review under Article 66 of the Code, 10 USC § 866, the convening authority loses jurisdiction of the case once he has published his action or has officially notified the accused thereof; and from that point on, jurisdiction is in the Court of Military Review. The only further contact that the convening authority has with the case occurs in the event of a remand or if he is empowered to suspend or remit the sentence pursuant to RCM 1108(b).[1]

■ Although the statutory changes in Articles 60, 61, 64 and 65 took effect on August 1, 1984, cases in which a sentence had been adjudged before that date were specifically excepted and were to be reviewed under the preexisting procedures. *See* Pub.L. No. 98–209, § 12(a)(4), 97 Stat. 1393, 1407 (1983). *Cf.* Exec. Order No. 12,473, 49 Fed.Reg. 17,152 (1984), as amended by Exec. Order No. 12,484, 49 Fed.Reg. 28,825 (1984) (parallel savings clause as to RCM 1107 and 1110). Since Montesinos was tried before that date, the new provisions for appellate review are inapplicable to his case. However, we conclude that the same result applies and that, whether a case was tried before or after August 1, 1984, the convening authority's jurisdiction ends when he has published his action or officially notified the accused thereof. Accordingly, the original convening authority lost jurisdiction in this case when, on November 8, 1982, he approved the findings and sentence and suspended a portion of the sentence.

Thereafter, the Court of Military Review remanded the case on December 24, 1985, to a different convening authority. That remand did not purport to confer upon this substitute convening authority all the powers that a convening authority would have possessed on the initial appellate review of the case pursuant to Article 60. Instead, under the terms of the remand, the convening authority either could "order a limited evidentiary hearing" to determine the validity of the sentence adjudged or could "order a rehearing on sentence." 21 MJ at 683.

■ Effective August 1, 1984, the Manual for Courts–Martial has provided that, if superior competent authority authorizes a convening authority to order a rehearing but "the convening authority finds a re-

---

1. RCM 1108(b) provides:

 The convening authority may, after approving the sentence, suspend the execution of all or any part of the sentence of a court-martial except for a sentence of death. The general court-martial convening authority over the accused at the time of the court-martial may, when taking the action under RCM 1112(f), suspend or remit any part of the sentence. The Secretary concerned and, when designated by the Secretary concerned, any Under Secretary, Assistant Secretary, Judge Advocate General, or officer exercising general court-martial jurisdiction over the command to which the accused is assigned may suspend or remit any part or amount of the unexecuted part of any sentence other than a sentence approved by the President. The commander of the accused who has the authority to convene a court-martial of the kind which adjudged the sentence may suspend or remit any part or amount of the unexecuted part of any sentence by summary court-martial or of any sentence by special court-martial which does not include a bad-conduct discharge regardless of whether the person acting has previously approved the sentence.

 As we interpret this language—which also took effect on August 1, 1984—the original convening authority, even after his initial action, would be empowered to "suspend or remit any part or amount of the unexecuted part of any sentence other than a sentence approved by the President," if he happened to be the "officer exercising general court-martial jurisdiction over the command to which the accused is assigned" and if he had been "designated by the Secretary concerned."

hearing as to any offenses impracticable," he "may dismiss those specifications and, when appropriate, charges." *See* RCM 1107(e)(1)(B)(iii); *cf.* Art. 69(c), UCMJ, 10 USC § 869(c).[2] Even before August 1, 1984, a convening authority had power to take such action, unless by the express terms of the remand he was specifically forbidden to do so. *See* para. 92*a*, Manual for Courts–Martial, United States, 1969 (Revised edition).

■ Neither the 1984 Manual for Courts–Martial nor its predecessors has provided expressly for the action that a convening authority may take when he has been directed to hold a rehearing on sentence but determines that this is impracticable. However, by analogy, we conclude that the 1984 Manual for Courts–Martial intends that in such instances the convening authority may simply approve a sentence of "no punishment." Likewise, we conclude that, even before the 1984 Manual was promulgated, a convening authority could take such action. Accordingly, even though the Court of Military Review did not specifically mention this alternative in its decision, we are convinced that, under the remand, the convening authority also was implicitly empowered to dispense with any type of further evidentiary hearing at the trial level and to approve a sentence of "no punishment" for Montesinos.

■ Nothing in the terms of the remand, however, permitted the convening authority to take any action as to the findings of guilty. Indeed, those findings had already been affirmed by the Court of Military Review; and this affirmance had not been set aside by that court, when it later considered the case upon remand from this Court.

In *United States v. Stevens*, 10 USCMA 417, 27 CMR 491 (1959), this Court considered the effect of action taken by the convening authority that was contrary the order of this Court. Judge Ferguson's opinion of the Court stated that "[s]ubsequent purported actions of the convening authority in the case were contrary to the Order of this court and void and of no effect" and noted that "[a]fter remand of a case, a lower court, *or in the military any lower echelon*, is without power to modify, amend, alter, set aside, or in any manner disturb or depart from the judgment of the reviewing court." *Id.* at 418, 27 CMR at 492 (emphasis added). Judge Latimer, concurring in the result, noted that the convening authority had issued an order

> after our decision had become final and the convening authority could not take action contrary thereto. A case must reach him in some legal manner, and here it did, but his action was curtailed. Under those circumstances, he must either act within the powers conferred upon him by the Code and in accordance with the order of this Court, or convince this Court to reverse its order. Certainly he cannot act in opposition thereto.

*Id.* at 420–21, 27 CMR at 494–95.

The principle announced in *Stevens* has been reaffirmed on various occasions. Thus, in *United States v. Kepperling*, 11 USCMA 280, 285, 29 CMR 96, 101 (1960), Judge Latimer stated for a unanimous court:

> We do point out, however, that the usual rule in civilian jurisdictions is to the effect that unless and until the appellate court releases the trial forum from the obligation imposed, there is no power residing in the lower tribunal except to enforce the mandate. That rule suggests a procedure which can be applied in military tribunals to assure that justice is done. In a proper case, where an accused makes a clear showing of circumstances entitling him to relief, the court could follow the procedure outlined by the board of review in *United States v. Collier*, [26 CMR 529 (ABR 1958)],

2. The fact that Article 69(c) and RCM 1107(e)(1)(B)(iii) authorize the convening authority to dismiss a specification when superior competent authority has directed a rehearing makes clear that the convening authority has no residual power to act on the case after he has initially acted. Instead, the power to act must be conferred on him by a remand of some type.

where it was suggested that the law officer:

"... halt the proceedings at that point, advise the convening authority in the premises, and that the latter should then return the case, with the record of the rehearing completed to the point of adjournment, to the Board of Review for its further consideration." [26 CMR 529, 537.]

While that may result in some delay, a court-martial cannot act in violation of the mandate of a board of review or this Court, and the appropriate place to seek relief from an oppressive order is with the tribunal which issued it.

Citing *Kepperling* and *Stevens* in *United States v. Yaeger*, 15 USCMA 226, 227, 35 CMR 198, 199 (1965), Chief Judge Quinn wrote for a unanimous court:

On remand, the trial forum is bound to comply with the mandate of the appellate authority. *United States v. Kepperling*, 11 USCMA 280, 29 CMR 96; *United States v. Stevens*, 10 USCMA 417, 27 CMR 491. The terms of the mandate may establish a particular matter as the 'law of the case.' *United States v. Kepperling*, *supra; Naples v. United States*, [344] F2d [508] (CA DC Cir) (1964); *see also United States v. Dean*, 7 USCMA 721, 23 CMR 185; or it may open the controversy so as to leave the trial court free to decide the matter anew on the basis of the evidence then before it. *United States v. Davenport*, 14 USCMA 152, 33 CMR 364; *United States v. Chapman*, 2 USCMA 138, 7 CMR 14; *see also United States v. Shotwell Mfg. Co.*, 355 US 233, 252, 2 LEd2d 234, 78 SCt 245 [256–57] (1957), dissenting opinion of Mr. Justice Black.

*See also United States v. Suzuki*, 20 MJ 248 (CMA 1985); *United States v. Bar-*

*field*, 2 MJ 136 (CMA 1977); *United States v. Renfroe*, 3 MJ 790, 793 (ACMR), *pet. denied*, 4 MJ 12 (1977); *United States v. Sims*, 3 MJ 671, 672 (ACMR), *pet. denied*, 4 MJ 104 (1977).

 If this Court remands a case to the Court of Military Review, that court can only take action that conforms to the limitations and conditions prescribed by the remand. *Cf. United States v. Suzuki, supra*. Of course, the same principle applies when the Court of Military Review remands a case to a convening authority for further action. A court that had no control over inferior tribunals or authorities would really not be a court; and the Court of Military Review IS a court. *See United States v. Woods*, 26 MJ 372, 373 (CMA 1988). *Cf. United States Navy–Marine Corps Court of Military Review v. Carlucci*, 26 MJ 328 (CMA 1988).

 As we interpret the Code, the convening authority to whom the case was remanded by the Court of Military Review had no independent statutory authority at that time to act on the findings and sentence. *See* Art. 60. Instead, he was acting by delegation from the Court of Military Review—to which he was subordinate (regardless of his rank) in the military justice system. If his action exceeds the scope of his delegated authority, it may be set aside on further direct review or, if necessary, by extraordinary writ.[3]

As we have noted, here the action of the convening authority clearly exceeded the power delegated to him by virtue of the remand. Indeed, Senior Judge Felder—who had participated in the decision by the panel that ordered the remand and presumably was familiar with its intent—wrote the later opinion of the Court of Military

---

**3.** We have heretofore ruled that the Courts of Military Review may issue extraordinary writs to preserve their jurisdiction because they are "courts" within the meaning of the All Writs Act, 28 USC § 1651(a). *Dettinger v. United States*, 7 MJ 216 (CMA 1979). Therefore, if a convening authority takes action that exceeds the authority vested in him upon remand from the Court of Military Review, that court may issue an ex-

traordinary writ to set aside his action and preserve the integrity of its orders. *Id.* Furthermore, since the integrity of the judicial process and of its judicial orders is at stake—and not merely the interests of the parties—the Court of Military Review is empowered to issue an extraordinary writ on its own motion, rather than await the filing of a motion by a party to the litigation.

Review which held that the convening authority's action was void.

### B

We have considered the suggestion that the remand by the Court of Military Review must be construed in light of AR 635-200. Certainly, if this regulation clearly contemplates that findings of guilty *must* be set aside as a prerequisite for an accused to be discharged for the good of the service, the remand order of the Court of Military Review might be interpreted to vest in the convening authority a power to set aside the findings of guilty that he otherwise would lack. *Cf. United States v. Woods, supra.*

In this connection, we note that Chapter 10 of AR 635-200 authorizes a discharge for the good of the service if a soldier "has committed an offense or offenses ... for which ... a bad-conduct or dishonorable discharge" may be adjudged. Paragraph 10-1a goes on to say:

> The discharge request may be submitted after court-martial charges are preferred against the member, or, where required, after referral, until final action by the court-martial convening authority. A member who is under a suspended sentence of a punitive discharge may likewise submit a request for discharge for the good of the Service.

The officer "exercising general court-martial jurisdiction over the" soldier decides "[w]hether [court-martial] proceedings will be held in abeyance"; and if they "are not held in abeyance," he "may approve the ... request for discharge" even "after the member has been tried." When this happens, "the officer who convened the court, in his or her action on the case, should not approve any punitive discharge adjudged. The officer should approve only so much of any adjudged sentence to confinement at hard labor or hard labor without confinement as has been served at the time of the action." Para. 10-1b. This regulation also provides that the soldier "will be given a reasonable" opportunity "to consult with ... counsel" (para. 10-2a )

and mentions factors to be considered in determining whether to exercise this discharge authority (para. 10-4). "Unless trial results in an acquittal or the sentence does not include a punitive discharge, even though one could have been adjudged by the court, a request for discharge submitted per this chapter may be withdrawn only with the consent of the commander exercising general court-martial jurisdiction." Para. 10-5. An other-than-honorable-discharge certificate usually will be issued; but "the separation authority may direct a general discharge." Para. 10-8.

 It is apparent that the regulation does not require setting aside findings of guilty in order for a soldier to be discharged for the good of the service pursuant to Chapter 10 of AR 635-200. For example, the provision in paragraph 10-1c that the convening authority "should approve only so much of any adjudged sentence to confinement at hard labor or hard labor without confinement as has been served at the time of the action" implies that the convening authority may approve the findings of guilty even though he directs an administrative discharge. This is because, unless findings of guilty were approved, there would be no legal basis for the convening authority to approve any part of the adjudged sentence.

 Since AR 635-200 permits a convening authority to discharge a soldier for the good of the service without setting aside findings of guilty that have been rendered by a court-martial, no basis exists for contending that in this case the remand to the convening authority implied a power for him to set aside the findings of guilty if Montesinos requested a discharge for the good of the service under Chapter 10 and if the request were granted.

 During oral argument, we inquired whether an administrative discharge certificate had been issued to Montesinos. Counsel for the parties were of the opinion that this had not occurred. We see no legal reason why issuance of the administrative discharge was barred—although we

readily understand why, in light of the legal questions involved, military authorities would have decided to postpone this action until appellate review has been completed. In any event, administrative separation under Chapter 10 after an accused had been found guilty by a court-martial does not vacate the conviction or terminate the process of appellate review. *See United States v. Jackson*, 3 MJ 153 (CMA 1977).

## C

█ Article 61(a) of the Code, 10 USC § 861(a), now provides that, in any "case subject to appellate review under" Article 66 or 69(a), "except a case in which the" approved "sentence . . . includes death, the accused may file with the convening authority a statement expressly waiving the right of the accused to such review." Article 61(b) authorizes an "accused to withdraw an appeal at any time," unless the approved sentence "includes death." *See also* RCM 1110(g)(3). In turn, Article 61(c) provides that "withdrawal of an appeal . . . bars review under" Article 66 or 69(a). As we construe Article 61(c), withdrawal of an appeal does not negate all the appellate review that has already taken place. Instead, it only precludes any further review at the instance of the party who has withdrawn the appeal.

█ Although the provisions in Article 61 for waiver and withdrawal of appeal took effect on August 1, 1984, a savings clause in the enacting legislation made them inapplicable to cases tried before that date. Pub.L. No. 98–209, § 12(a)(4), 97 Stat. 1393, 1407 (1983). Since the trial of Montesinos took place before that date, there was no statutory procedure which provided a basis for his later attempt to withdraw his appeal from consideration by the Court of Military Review. However, even assuming *arguendo* that some nonstatutory basis could be found for withdrawing his appeal, the withdrawal would have no effect on judicial action that had already been taken—including the action taken by the Court of Military Review on October 26, 1983, or the decision it ren-

dered on December 24, 1985, after the case had been remanded from our Court.

█ When on December 24, 1985, the Court of Military Review remanded the case to a different convening authority and specified the action to be taken, the findings of guilty, as previously affirmed by the court, were left intact. Even if Montesinos had been able to withdraw his appeal at that time, the withdrawal would not have affected the right of the substitute convening authority to order a rehearing on sentence. Neither under the Code as it existed before or after August 1, 1984, could an accused, by his own action, prevent resentencing which had been ordered by competent authority—any more than at trial he could prevent his being sentenced in the first place. Likewise, a successful withdrawal of the appeal at that point would not have affected the right of a convening authority to conduct an evidentiary hearing, as previously directed by a Court of Military Review. Furthermore, if the convening authority took action which exceeded the scope of the remand, subsequent withdrawal of the accused's appeal would not affect the authority of the Court of Military Review—whether on motion of the parties or on its own motion—to set aside the *ultra vires* action of the convening authority in order to protect the integrity of the judicial process.

We assume that Montesinos sought to withdraw his appeal on the assumption that, by doing so, he would help assure that he received the benefit of the convening authority's dismissal of the charges and approval of the administrative discharge. This assumption was erroneous, for the Court of Military Review was empowered by the All Writs Act, 28 USC § 1651(a), to set aside the action of the convening authority insofar as it exceeded the scope of the remand. Accordingly, Montesinos had nothing to gain by withdrawing his appeal; and, under these circumstances, we assume that he would not have wanted to do so.

In any event, the provision in Article 61, which authorized withdrawal of an appeal

was not applicable to Montesinos because he had been tried before August 1, 1984. Therefore, the Court of Military Review was not required to allow the withdrawal. Even on the dubious premise that the Court of Military Review had discretion to allow withdrawal of an appeal, it certainly in no way abused any such discretion by denying this withdrawal.

## D

■ We affirm the decision of the Court of Military Review dated May 14, 1987, insofar as it vacated the convening authority's action setting aside the findings of guilty and dismissal of the charges. Rather than protract the case further by remanding again for further action by a convening authority, the Court of Military Review properly affirmed a sentence of "no punishment." Like the court below, we are not concerned directly with the validity of the administrative discharge approved by the convening authority; but, as we have already explained, we perceive no inconsistency between that court's affirmance of the findings and issuance of such a discharge by the substitute convening authority.

## E

To sum up: (1) The convening authority exceeded his power under the remand from the Court of Military Review; (2) The attempted withdrawal of the appeal was invalid, so it did not affect the power of the Court of Military Review to vacate the action of the convening authority, insofar as he purported to set aside the findings of

guilty and to dismiss the charges; (3) The findings of guilty as originally affirmed are in full effect; and (4) At this point in the lengthy proceedings, the Court of Military Review could properly decide that the sentence of "no punishment" was appropriate.

The decision of the United States Army Court of Military Review (24 MJ 682) is affirmed.

Judge SULLIVAN concurs.

COX, Judge (dissenting):

I agree with the proposition that a convening authority cannot disregard a mandate of this or any other court to disadvantage an accused beyond the extent permitted by the court. However, I do read the Uniform Code of Military Justice, in light of the legislative history, as a congressional grant of unfettered discretion to convening authorities to act for the betterment of an accused, even if beyond that authorized by a court, if such action is deemed appropriate under the circumstances. Art. 64, UCMJ, 10 USC § 864 [1]; *Hearings on H.R. 2498 Before a Subcomm. of the House Comm. on Armed Services*, 81st Cong., 1st Sess. 1182–85 (1949) (testimony of Felix Larkin, Assistant General Counsel, O.S.D.). Nothing in the Code or the Manual for Courts–Martial limits the time of such discretion up to the point the conviction is final.

I view this convening authority as acting within that discretion. Under the circumstances, I do not see that what these parties have agreed to is any business of this Court.[2]

---

1. After the date of this court-martial, the Uniform Code of Military Justice was amended. Those provisions relating to the convening authority's action have been somewhat amplified and now appear in Article 60, UCMJ, 10 USC § 860.

2. The fact that the Department of the Army would urge this concentration of power in the

Court of Military Review is not surprising. The battle between Washington-based authorities and field commanders for ultimate control over the outcome of courts-martial has been the subject of debate for many years, notably the now-famous Ansell–Crowder disputes which occurred during the second decade of this century.