# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

———————————

**No. ACM S32538**

———————————

**UNITED STATES**
*Appellee*

**v.**

**Cory RAMIREZ**
Airman (E-2), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 24 January 2020

———————————

*Military Judge:* Matthew D. Talcott.

*Approved sentence:* Bad-conduct discharge, confinement for 3 months, forfeiture of $1,092.00 pay per month for 3 months, and reduction to E-1. Sentence adjudged 22 March 2018 by SpCM convened at Joint Base San Antonio-Fort Sam Houston, Texas.

*For Appellant:* Major Rodrigo M. Caruço, USAF.

*For Appellee:* Colonel Shaun S. Speranza, USAF; Lieutenant Colonel Joseph J. Kubler, USAF; Captain Kelsey B. Shust, USAF; Captain Zachary T. West, USAF; Mary Ellen Payne, Esquire; Justin A. Miller (civilian intern).[1]

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Senior Judge J. JOHNSON delivered the opinion of the court, in which Judge KEY joined. Judge POSCH filed a separate opinion concurring in part and dissenting in part.

———————————

[1] Mr. Miller was a legal intern with the Air Force Legal Operations Agency and was at all times supervised by attorneys admitted to practice before this court.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

J. JOHNSON, Senior Judge:

A military judge found Appellant guilty, in accordance with his pleas, of one specification of wrongfully using marijuana on divers occasions and one specification of wrongfully introducing marijuana onto a military installation, both in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[2] A special court-martial composed of officer and enlisted members found Appellant not guilty, in accordance with his pleas, of one specification of wrongful use of psilocybin in violation of Article 112a, UCMJ, but guilty of the lesser-included offense of attempted wrongful use of psilocybin in violation of Article 80, UCMJ, 10 U.S.C. § 880.[3] The court-martial sentenced Appellant to a bad-conduct discharge, confinement for three months, forfeiture of $1,092.00 pay per month for three months, and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

Appellant raises a single issue on appeal: whether his conviction for attempted use of psilocybin is factually sufficient. In addition, we address an apparent error in the convening authority's action. We find the conviction factually sufficient, but we find that new post-trial processing and action by the convening authority are required.

## I. BACKGROUND

At trial, Appellant pleaded guilty to wrongfully using marijuana on divers occasions between on or about 26 July 2017 and on or about 8 September 2017.[4] During his colloquy with the military judge regarding the providency of his plea, Appellant explained he had smoked marijuana with civilian friends more than once but less than six times during the charged time frame. Appellant

_____

[2] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2016 ed.).

[3] The court members also found Appellant not guilty of one specification of absenting himself from his place of duty, in violation of Article 86, UCMJ, 10 U.S.C. § 886.

[4] Appellant, through counsel, did not specifically announce a plea with respect to Charge I, alleging violations of Article 112a, UCMJ. However, he pleaded guilty to Specifications 1 and 2 under Charge I, which necessarily implied a guilty plea to Charge I, and the court-martial proceeded accordingly without comment by the military judge or counsel. We find no corrective action to be required as a result of Appellant's failure to enter an explicit plea as to Charge I.

also pleaded guilty to bringing 1.5 grams of marijuana onto Joint Base San Antonio-Lackland, Texas, between on or about 1 August 2017 and on or about 29 August 2017. Appellant informed the military judge he obtained the marijuana from a civilian friend outside the base and brought it to his on-base dormitory room.

Appellant pleaded not guilty to wrongfully using psilocybin, a Schedule I controlled substance, between on or about 1 July 2017 and on or about 30 September 2017. The court-martial proceeded to the findings phase with respect to the psilocybin specification, as well as an unrelated specification that Appellant was absent from his place of duty in October 2017.

The Prosecution called SG, a civilian Security Forces detective who participated in an interview of Appellant on 15 September 2017. SG testified that Appellant admitted being at a party with several other people where there was a "little baggie of [m]ushrooms on the counter." Appellant admitted that another Airman who was present, Airman First Class (A1C) JD, "crumpled up" the mushrooms on top of pizza, which Appellant then consumed. Trial counsel entered into evidence a video recording of portions of this interview. In the recording of the interview, Appellant eventually admitted that he and A1C JD ate mushrooms on pizza at a party at A1C JD's home.

Special Agent SA, an agent with the Air Force Office of Special Investigations, testified that he conducted a subsequent interview with Appellant on 19 September 2017. During that interview, Appellant again admitted he "used" mushrooms one time at A1C JD's residence. On cross-examination, both SG and Special Agent SA testified Appellant stated he felt no effects from the mushrooms, and that in the course of their investigation they did not recover any psilocybin mushrooms or images of the mushrooms Appellant consumed.

The Government also called A1C JD, who testified under a grant of testimonial immunity. According to A1C JD, Appellant used mushrooms twice at A1C JD's apartment. A1C JD testified that prior to the first occasion, A1C JD and a third Airman, A1C KH, had discussed using mushrooms together. Within a few days, Appellant, A1C JD, A1C KH, and others gathered at A1C JD's off-base apartment to socialize, play video games, watch television, and eat pizza. Another Airman, A1C BH, brought mushrooms in a plastic bag. A1C JD described the mushrooms as "like [m]ushrooms that you would find in the wilderness, like the fungus [m]ushrooms, except for that they had a little bit of light green and purple on it, probably from the chemicals on it." A1C JD and Appellant put the mushrooms on the pizza and consumed them. A1C JD testified that 30 to 45 minutes after eating the mushrooms, he felt "a little bit of tingling in my legs and giggly, more like an antidepressant." Appellant, by contrast, "looked like he was . . . having a bad trip." A1C JD explained Appel-

lant appeared "like someone being blacked out, drunk. He wasn't really coherent to what we were telling him or asking him. . . . [W]e would ask him something and he would not respond or have a weird statement . . . ." When asked why Appellant experienced a different effect from himself, A1C JD responded that Appellant, unlike himself, had consumed alcohol as well as the mushrooms.

A1C JD testified that one or two weeks after this party, he and Appellant used mushrooms at another gathering at A1C JD's apartment. This time another Airman, A1C DL, and an unnamed civilian also ingested them. Again, it was A1C BH who brought the mushrooms, which had a similar appearance as before. Again the Airmen put the mushrooms on top of pizza and ate them, and again the mushrooms caused A1C JD to feel "tingling in the leg," "[h]appy," and "giggly." However, on this occasion Appellant did not drink alcohol, and he appeared to feel similar effects to A1C JD, acting "[g]oofy" and "giggly."

The Government also called Dr. RH, the deputy director of the Air Force Drug Testing Laboratory, who testified as an expert in forensic toxicology. Dr. RH provided general information about psilocybin. She testified, *inter alia*, that psilocybin is "a major psychoactive component that's found in [m]ushrooms." Psilocybin is a "Schedule I drug" under the Controlled Substances Act, meaning it does not have any recognized medical use. Dr. RH testified that psilocybin is typically ingested by eating the mushrooms, often with another food to mask the mushrooms' taste. Dr. RH explained the "effects are variable, but in general you'll experience sort of a happy effect or a euphoric, a high. Also you can experience hallucinations, either visual or mental, as well as just altered perceptions." She further testified that psilocybin is detectable in a person's system for a "very short" period, only one or two days. On cross-examination, Dr. RH testified that there are thousands of species of mushrooms, of which "[o]ver 200" contain psilocybin. Dr. RH conceded that a drug test would be required to "definitively" know whether someone ingested psilocybin. Without a drug test, hallucinations would be "a really big clue" that someone had ingested psilocybin. The euphoric effect sometimes attributed to psilocybin can be produced by other causes, including low doses of alcohol or simply socializing with friends. Dr. RH also opined that an "average person" would not be able to tell whether a mushroom contained psilocybin simply by its appearance, and she agreed that psilocybin mushrooms are "commonly misidentified."

At the Government's request, the military judge took judicial notice that psilocybin is a "Schedule I controlled substance under the law of the United States." The Government did not introduce any urinalysis result or physical evidence relating to Appellant's alleged use of psilocybin.

When discussing member instructions on findings, both trial counsel and the trial defense counsel agreed with the military judge that the evidence

raised the lesser-included offense of attempted wrongful use of a controlled substance. The military judge instructed the court members, *inter alia*, on the charged offense of wrongful use of psilocybin as well as the lesser-included offense of attempt. The Defense did not object to these instructions. The court members found Appellant not guilty of wrongful use of psilocybin, but guilty of attempt.

## II. DISCUSSION

### A. Factual Sufficiency

#### 1. Law

We review issues of factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018).

The elements of the offense of attempted wrongful use of psilocybin in violation of Article 80, UCMJ, for which Appellant was convicted included the following: (1) that Appellant did a certain overt act, that is, ingested mushrooms he believed to be a contraband substance; (2) that the act was done with the specific intent to commit a certain offense under the UCMJ, that is, wrongful use of a controlled substance; (3) that the act amounted to more than mere preparation; and (4) that the act apparently tended to effect the commission of the intended offense. *See Manual for Courts-Martial, United States* (2016 ed.) *(MCM)*, pt. IV, ¶ 4.b.; *United States v. Payne*, 73 M.J. 19, 24 (C.A.A.F. 2014).

The elements of the offense of wrongful use of psilocybin in violation of Article 112a, UCMJ, as charged in Appellant's case include: (1) that at the time and place alleged, Appellant used psilocybin, a Schedule I controlled substance; and (2) that Appellant's use was wrongful. *See MCM*, pt. IV, ¶ 37.b.(2); *United States v. Paul*, 73 M.J. 274, 277 (C.A.A.F. 2014).

**2. Analysis**

Appellant contends the evidence was insufficient to prove beyond a reasonable doubt that he ingested psilocybin mushrooms. However, Appellant was not convicted of *actual* wrongful use of psilocybin mushrooms; he was convicted of *attempted* use of psilocybin mushrooms. Actual ingestion of psilocybin is not an element of attempted use, nor is Appellant required to have believed he was specifically ingesting "psilocybin," so long as he believed he was ingesting a controlled substance. *See United States v. Dillon*, 61 M.J. 221, 222 (C.A.A.F. 2005) (quoting *United States v. Stringfellow*, 32 M.J. 335, 336 (C.M.A. 1991)).

To be guilty of the lesser included offense of attempt, based on the specification of wrongful use charged in this case, the Government was required to prove, *inter alia*, that Appellant wrongfully ingested mushrooms that he believed contained a controlled substance, and he did so with the intent to commit the offense of wrongfully using a controlled substance. We find the Government offered sufficient evidence that Appellant did so. After some initial reluctance, Appellant admitted to investigators that there were "[s]hrooms" at the party at A1C JD's apartment, and he acknowledged "doing [s]hrooms too" after others suggested that he "try them." Specifically, Appellant admitted that A1C JD "crumpled" mushrooms from a baggie on top of pizza, and then Appellant and A1C JD ate them, although Appellant denied feeling any effects. It is evident from the questions, answers, and entire context of the recorded interview that Appellant knew the "[s]hrooms" he was being questioned about were of a contraband nature. Furthermore, Appellant's admissions were powerfully corroborated by A1C JD's testimony. Although A1C JD's immunized testimony provided much greater detail, it strongly comported with Appellant's statements with respect to the setting and manner of Appellant's ingestion of the mushrooms.

In summary, the Government introduced convincing evidence that Appellant ingested mushrooms that he believed contained a contraband substance, with the intent to wrongfully use a controlled substance. The overt act of eating the mushrooms is plainly more than mere preparation to use the controlled substance, and it apparently tended to effect the commission of the intended wrongful use. The absence of conclusive evidence that Appellant actually used psilocybin does much to explain why the court members found Appellant not guilty of the charged actual wrongful use of psilocybin; however, it does little to impugn their finding that Appellant is guilty of attempted use. Having weighed the evidence in the record of trial, and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. *See Turner*, 25 M.J. at 325. Appellant's conviction for attempted wrongful use of psilocybin in violation of Article 80, UCMJ, is therefore factually sufficient.

**B. Convening Authority Action**

**1. Additional Background**

Both the original convening authority action dated 18 July 2018 and the corrected action dated 31 July 2018 included the following language: "Pursuant to Article 57, Section (a)(2), UCMJ, all of the adjudged forfeitures were deferred from 5 April 2018 until the date of this action." However, neither a request for deferment of the adjudged forfeitures nor any document purporting to grant or deny such a request are included in or attached to the record of trial. *See* Rules for Courts-Martial (R.C.M.) 1103(b)(3), 1103(c)(1) (requiring "[a]ny deferment request and the action on it" to be attached to the record of any special court-martial in which a bad-conduct discharge is adjudged).

Accordingly, this court ordered the Government to show good cause as to why it should not take corrective action. In response, the Government conceded there was no evidence Appellant specifically requested "deferment" of his adjudged forfeitures. However, the Government contended the convening authority's action was not erroneous because this court should construe Appellant's clemency request that his forfeitures be "waived," "disapproved," and "set aside" as a written request for deferment. In the alternative, the Government contends any error in the action is not prejudicial to Appellant's substantial rights. Appellant concurs with the Government that any error with respect to the action "did not result in prejudice."

**2. Law**

We review post-trial processing issues de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63 (C.A.A.F. 2000)).

Article 57(a)(2), UCMJ, 10 U.S.C. § 857(a)(2) provides in part: *"[o]n application by an accused*, the convening authority may defer a forfeiture of pay or allowances . . . until the date on which the sentence is approved by the convening authority." (Emphasis added). Similarly, R.C.M. 1101(c)(2) provides:

> *Who may defer.* The convening authority or, if the accused is no longer in the convening authority's jurisdiction, the officer exercising general court-martial jurisdiction over the command to which the accused is assigned, may, *upon written application of the accused*, at any time after the adjournment of the court-martial, defer the accused's service of a sentence to confinement, forfeitures, or reduction in grade that has not been ordered executed.

(Second emphasis added).

**3. Analysis**

We cannot agree that there is no error in the convening authority's action. Both Article 57(a)(2), UCMJ, and R.C.M. 1101(c)(2) explicitly require the accused to request deferment as a precondition to the convening authority's deferment of an element of the adjudged sentence. The Government concedes Appellant never requested deferment. Therefore, the convening authority had no authority to defer the adjudged forfeitures.

Moreover, we decline the Government's invitation to interpret Appellant's request that his forfeitures be "set aside" or "waived" as a request for deferment. Waiver, set aside, and deferment are distinct actions a convening authority may take, governed by different provisions of law. A convening authority's power to "set aside" or disapprove an accused's adjudged forfeitures is governed by Article 60, UCMJ, 10 U.S.C. § 860, and R.C.M. 1107(d), and results in the elimination of the disapproved portion of the adjudged sentence. "Waiver" of forfeitures is provided for in Article 58b(b), UCMJ, 10 U.S.C. § 858b(b), and R.C.M. 1101(d), and specifically applies not to adjudged forfeitures but to mandatory forfeitures required by Article 58b(a), UCMJ, where the sentence includes a punitive discharge and any term of confinement. Waiver of mandatory forfeitures results in the pay that would be otherwise so forfeited being paid to the accused's dependents during the accused's confinement, for a period not to exceed six months, as directed by the convening authority. In itself, waiver has no effect on adjudged forfeitures. *See generally United States v. Emminizer*, 56 M.J. 441 (C.A.A.F. 2002).

We do not find persuasive the Government's citation to this court's unpublished opinion in *United States v. Dadona*, No. ACM 39202, 2018 CCA LEXIS 325 (A.F. Ct. Crim. App. 2 Jul. 2018) (unpub. op.), *rev. denied*, 78 M.J. 160 (C.A.A.F. 2018). There we criticized the staff judge advocate and convening authority for failing to read an implicit request for deferment of forfeitures into the accused's clemency request that the convening authority "reinstate my E-2 rank, and please consider granting 4 months of E-2 pay so my grandparents can continue to receive financial support." *Id*. at *23 (internal quotation marks omitted). In *Dadona*, the appellant's sentence did not include any adjudged forfeitures, and the court noted he was not eligible for waiver of forfeitures because he had no dependents. *Id*. at *24. Under these circumstances, the "[a]ppellant's request could only have been for deferment [of mandatory forfeitures]." *Id*. Appellant's case differs from *Dadona* in two significant ways. First, in *Dadona* the appellant's clemency request did not explicitly refer to "set aside" and "waiver," as Appellant's did. *See id*. at *23. Second, in Appellant's case, the set aside and waiver he requested were available alternatives whereby the convening could grant relief, because Appellant both received adjudged forfeitures and, as of the date of action, had dependents. The particular circumstances that prompted our comments in *Dadona* are not present here.

The Government's reliance on the provision in Article 59(a), UCMJ, 10 U.S.C. § 859(a), that a "finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused" is misplaced. Here, the question is not the correctness of the findings or sentence; it is the lawfulness of the convening authority's action. In the past, we have not hesitated to require correction of erroneous convening authority action. *See, e.g., United States v. Smith*, No. ACM 39463, 2019 CCA LEXIS 307, at *7–8 (A.F. Ct. Crim. App. 12 Jul. 2019) (unpub. op.); *United States v. Del Toro*, No. ACM 39225, 2018 CCA LEXIS 219, at *2 (A.F. Ct. Crim. App. 27 Apr. 2018) (unpub. op.) (per curiam); *United States v. Duran*, No. ACM S32407, 2017 CCA LEXIS 381, at *1–2 (A.F. Ct. Crim. App. 31 May 2017) (unpub. op.) (per curiam); *United States v. Perea*, No. ACM S32408, 2017 CCA LEXIS 353, at *4–5 (A.F. Ct. Crim. App. 24 May 2017) (unpub. op.). In this case, the convening authority's action was not merely incomplete or erroneous; it was *ultra vires*. Accordingly, a new action rather than a corrected action is required.

Finally, Appellant's concurrence with the Government that he suffered "no prejudice" from the convening authority's error does not change our analysis. We set aside the action not for Appellant's benefit, but to uphold the law—specifically a limitation Congress has placed on the convening authority. Nothing in Article 66, UCMJ, 10 U.S.C. § 866, constrains us to take corrective action only for the benefit of an appellant. In some cases, maintaining the integrity of the military justice system enacted by Congress may require this court to take action that is not requested by any party. *Cf. United States v. Montesinos*, 28 M.J. 38, 47 (C.M.A. 1989) (affirming court of criminal review's decision vacating convening authority's *ultra vires* set aside of findings previously affirmed by the appellate court and rejecting the appellant's attempt to withdraw the case from appellate review). This is such a case.

## III. CONCLUSION

The convening authority's action, dated 31 July 2018, is **SET ASIDE**. The record of trial is returned to The Judge Advocate General for remand to the convening authority for new post-trial processing and action consistent with this opinion. Thereafter, Article 66, UCMJ, 10 U.S.C. § 866, will apply.

POSCH, Judge (concurring in part and dissenting in part):

I agree with my esteemed colleagues in the majority that Appellant's conviction for attempted use of psilocybin is factually sufficient. And, I am of like mind that the plain language of Article 57(a)(2), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 857(a)(2), and Rule for Courts-Martial (R.C.M.)

1101(c)(2) require an accused to request deferment of a component of his sentence before a convening authority may grant a deferment. However, I respectfully dissent with regard to the majority's conclusion that post-trial processing anew is an appropriate remedy under the circumstances of this case where Appellant disavows prejudice.

Undeniably, a convening authority may defer forfeitures until action "on application by an accused." Article 57(a)(2), UCMJ. But it does not follow that a convening authority's failure to abide by a procedural prerequisite leaves error for this court to correct absent some showing of prejudice to an appellant. To establish prejudice due to errors in post-trial processing, an appellant must make some "colorable showing of possible prejudice." *United States v. LeBlanc*, 74 M.J. 650, 660 (A.F. Ct. Crim. App. 2015) (quoting *United States v. Scalo*, 60 M.J. 435, 437 (C.A.A.F. 2005)). Here, the convening authority failed to comply with a statutory and regulatory requirement that was strictly procedural in nature. This was error. Still, Appellant's counsel informs this court that the error "did not result in prejudice" to Appellant.

Aside from ordering corrective action when prejudicial error is shown, this court may instruct a convening authority to modify an action under the circumstances prescribed in R.C.M. 1107(f)(2), (g), which is not predicated on prejudice to an appellant. Yet nothing in the post-trial or appellate record reveals that the action, which directed deferment of adjudged forfeitures "from 5 April 2018 until the date of this action," was anything other than a considered and deliberate implementation of the convening authority's intent. The staff judge advocate to the convening authority declares so much when she stated that to the best of her recollection, the "action is a reflection of the discussions" she had with the convening authority. The action is consistent with her advice, facially correct, and deferment is among the permissible acts a convening authority has discretion to order. Though the procedural means to this end were irregular, the action itself is undeniably "clear and unambiguous," *United States v. Politte,* 63 M.J. 24, 26 (C.A.A.F. 2006) (footnote omitted) (finding the court of criminal appeals erred in failing to identify and return an ambiguous action to the convening authority), making submission to the convening authority for further clarification unnecessary because there is nothing inaccurate or erroneous in the action itself that we may instruct the convening authority to fix. R.C.M. 1107(f)(2), (g). For this reason, the action is not subject to the provisions of R.C.M. 1107, and is beyond this court's authority to order the convening authority to remedy.

Finding no prejudice in the record, and relying on the assertion by Appellant's counsel that there was none, leaves no error for this court to mend by fashioning a remedy. I would not set aside a clear and unambiguous action on grounds that the convening authority failed to adhere to a procedure required

by law, but would instead affirm the sentence as adjudged and approved by the convening authority in reliance on the statement by Appellant's counsel, and our own determination, that Appellant suffered no harm.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court