UNITED STATES

v.

**Spencer I. JORDAN, 223 88 6944, Airman (E-3), U.S. Navy.**

**NMCM 86 1006R.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 22 Oct. 1985.

Decided 8 Sept. 1992.

858

Capt Dwight H. Sullivan, USMC, Appellate Defense Counsel.

LCDR Lawrence W. Muschamp, JAGC, USN, Appellate Government Counsel.

Before FREYER, HOLDER and MOLLISON, JJ.

MOLLISON, Judge:

On 3 February 1985, Electrician's Mate Second Class Gregory V. Swafford, U.S. Navy disappeared from his duty station. His body was later discovered in a tidal creek in Chesapeake, Virginia. On 31 July and 3 August 1985, the appellant confessed to civilian police that Petty Officer Swafford had been strangled and robbed by the appellant and another servicemember. The appellant was tried by general court-martial in October of 1985. He was found guilty of conspiracy to commit robbery, robbery and murder while engaged in the perpetration of a robbery in violation of Articles 81, 122, and 118, Uniform Code of Military Justice [hereinafter UCMJ or "the Code"], 10 U.S.C. § 881, 922, 918, respectively, and was sentenced to confinement for life, a dishonorable discharge, total forfeitures, and reduction to pay grade E–1.

At trial and on appeal, the appellant asserted that his pretrial confessions to civilian police should be suppressed on grounds they had been taken contrary to the Constitution and Military Rule of Evidence (Mil.R.Evid.) 305(e).[1] Initially the appellant was placed in pretrial confinement in a

Navy brig to await trial for Swafford's murder. Though military charges had not yet been preferred, a military lawyer was appointed to represent the appellant, and the appellant consulted with him on 31 July 1985. The same day, Navy officials delivered the appellant to the civilian authorities on a civilian arrest warrant for the same murder. The civilian police detective who executed the arrest warrant was aware of the appointment of military defense counsel. The same detective initiated the interrogation that resulted in a confession. The civilian police detective did not notify the appellant's military defense counsel of his intent to interrogate the appellant. A second interrogation was initiated three days later by a police sergeant of a different civilian jurisdiction. He apparently had no knowledge of the appointment of military defense counsel. The appellant again confessed. In light of the matters revealed in the second confession, the appellant was returned to the Navy and the aforementioned court-martial ensued.[2] The appellant claimed that the first confession was inadmissible because military defense counsel was not given notice of the interrogation and was not present for it. He also claimed the first confession tainted the second.

The Fifth Amendment to the Constitution provides that no person shall be compelled in any criminal case to be a witness against himself. In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that in order to ensure an accused's Fifth Amendment right against compulsory self-incrimination is protected, an accused's

---

1. The first confession was made to a detective of the Chesapeake, Virginia, Police Department. The second was made to a police sergeant from the Norfolk, Virginia, Police Department.

The appellant's arguments and briefs appeared to encompass both the Fifth and Sixth Amendments as bases for suppressing the statements on constitutional grounds. As noted below, this Court and the United States Court of Military Appeals previously entertained the appellant's appeal and ruled adversely to him. The case is now before us again on remand from the United States Supreme Court. On remand, the Sixth Amendment is not advanced as a basis for suppressing the confessions.

2. The case was processed under Supreme Court precedents on the issue of courts-martial jurisdiction existing prior to *Solorio v. United States*, 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987). *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). The revelation in the appellant's final statement to the civilian policeman that the plot to rob Petty Officer Swafford was conceived aboard a military installation appears to have been the factor that induced Navy authorities to obtain the return of the appellant for trial by court-martial.

pretrial statements made to police while in their custody would be inadmissible against the accused unless the statement was preceded by advice to the accused that he had the right to remain silent and the right to the presence of counsel, retained or appointed, and the accused voluntarily, knowingly and intelligently waived those rights. 384 U.S. at 444–45, 86 S.Ct. at 1612–13. In *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the Supreme Court further held that when an accused has invoked his right to have counsel present during a custodial interrogation, the accused may not be subjected to further interrogation by the authorities until counsel is made available to him unless the accused himself initiates further communication, exchanges, or conversations with the police. It also held in *Edwards* that a waiver of the accused's previously-invoked right to the presence of counsel cannot be shown only by the fact that the accused responded to further police-initiated custodial interrogation, even if he has been readvised of his rights. 451 U.S. at 484–85, 101 S.Ct. at 1884–85. These same constitutional limitations on the admissibility of pretrial statements have been applied to trials by court-martial. *E.g., United States v. Goodson,* 22 M.J. 22 (C.M.A.1986); *United States v. Tempia,* 16 C.M.A. 629, 37 C.M.R. 249 (1967); Mil.R.Evid. 304(a), (c). *See also United States v. King,* 30 M.J. 59 (C.M.A.1990).

■ The President has promulgated the Military Rules of Evidence for use in trials by court-martial. Article 36, UCMJ; 10 U.S.C. § 836. Mil.R.Evid. 304 provides that an accused's involuntary statements are inadmissible. A statement is "involuntary" under the rule if it is obtained in violation of the self-incrimination privilege or due process clause of the Fifth Amendment, Article 31 of the Code, 10 U.S.C. § 831, or through the use of coercion, unlawful influence, or unlawful inducement. Mil.R.Evid. 304(c)(3). Mil.R.Evid. 305 also provides that an accused's pretrial statement is involuntary, and hence inadmissible, if it is obtained without first observing certain procedures. *Inter alia,* a servicemember accused or suspected of an offense

must be warned of his right to consult with and have present counsel, retained or appointed, prior to interrogation: (1) if the servicemember is in custody or is deprived of his freedom of action in any significant way, or (2) if the interrogation is conducted subsequent to preferral of charges or the imposition of pretrial restraint and the interrogation concerns the offenses or matters that were the subject of the preferral of charges or the imposition of pretrial restraint. Mil.R.Evid. 305(d). Additionally, counsel must be given notice of an intended interrogation and a reasonable opportunity to attend. Mil.R.Evid. 305(e). The requirements of Mil.R.Evid. 305 apply to persons subject to the Code, including persons acting as knowing agents of a military unit or of a person subject to the Code. Mil.R.Evid. 305(b)(1).

■ These two grounds for suppression—one based on the Constitution, the other on regulation—differ. The Fifth Amendment *Miranda/Edwards* constitutional requirements apply to military and civilian law enforcement authorities conducting an interrogation of an accused in custody. If the accused invokes his right to counsel, the interrogation must cease and may not again be initiated by such authorities in the absence of counsel. However, this rule "applies only when the suspect 'has expressed' his wish for the particular sort of lawyerly assistance that is the subject of *Miranda.* It requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police." *McNeil v. Wisconsin,* —— U.S. ——, ——, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158 (1991) (citation omitted). *See also Moran v. Burbine,* 475 U.S. 412, 423 n. 1, 106 S.Ct. 1135, 1141 n. 1, 89 L.Ed.2d 410 (1986). The assertion of counsel for these purposes must be within the context of custodial interrogation. *McNeil,* —— U.S. at —— n. 3, 111 S.Ct. at 2211 n. 3. On the other hand, Mil.R.Evid. 305 applies only to military personnel, persons acting as their agents, or persons acting as agents of a military unit. It applies to custodial in-

terrogations and to non-custodial interrogations occurring after charges have been preferred or the imposition of pretrial restraint. Mil.R.Evid. 305(e) obliges the interrogator to give notice of interrogation to counsel and afford the accused's retained or appointed counsel an opportunity to attend the interrogation, apparently whether or not the accused has ever invoked his right to counsel within the context of an interrogation.[3]

This Court and the United States Court of Military Appeals previously rejected appellant's assignment of error respecting the suppression of his confessions and affirmed the appellant's conviction.[4] *United States v. Jordan*, 29 M.J. 177 (C.M.A.1989); No. 86–1006 slip op. (N.M.C.M.R. 30 June 1987). After the decisions of this Court and the Court of Military Appeals were handed down, the Supreme Court decided *Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). In that case, the Supreme Court clarified *Edwards*, holding that "when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney." 498 U.S. at ——, 111 S.Ct. at 491. On 10 December 1990, the United States Supreme Court granted appellant's petition for certiorari, vacated the judgment, and remanded the case to the Court of Military Appeals "for

further consideration in light of *Minnick*." 498 U.S. at ——, 111 S.Ct. at 575. The Court of Military Appeals considered it appropriate that this Court should have the initial opportunity to review this case in light of *Minnick*, and therefore, it set aside our original decision and remanded the record to this Court for further review. 32 M.J. 376 (C.M.A.1991) (summary disposition). It is on the basis of *Minnick*, which further interprets an accused's Fifth Amendment right against self-incrimination, that the appellant's case has been remanded for our further review.[5]

Neither the Supreme Court nor the Court of Military Appeals has remanded the case for further review of our rulings respecting the suppression of the confessions on the grounds they were taken by the civilian police contrary to the Military Rules of Evidence. Nonetheless, appellant again asserts on remand that the appellant's confessions to civilian authorities should have been suppressed because they were taken in contravention of appellant's Fifth Amendment right to counsel *and* Mil. R.Evid. 305(e). The appellant also has assigned three new supplemental errors unrelated to the admission of his confessions.[6] During oral argument, appellant's counsel urged that a vacation of the judgment or setting aside of our previous decision entitled the appellant to re-submit all issues to this Court for consideration. We disagree.

---

**3.** Mil.R.Evid. 305(e) is based on *United States v. McOmber*, 1 M.J. 380 (C.M.A.1976). Mil.R.Evid. 305(e) Analysis. In *McOmber*, the accused invoked his right to counsel.

**4.** Appellant was also convicted of unpremeditated murder. This Court dismissed that offense on grounds it was multiplicious with the offense of murder while engaged in the perpetration of a robbery.

**5.** The facts of the appellant's case are otherwise comprehensively summarized in the Court of Military Appeal's affirmance and will not be restated herein except as necessary to the disposition of this remand.

**6.** SUPPLEMENTAL ISSUE I. THE STAFF JUDGE ADVOCATE ERRED BY ADVISING THE CONVENING AUTHORITY THAT APPELLANT HAD BEEN CONVICTED OF A MURDER SPECIFICATION WHICH HAD BEEN DISMISSED.

SUPPLEMENTAL ISSUE II. APPELLANT'S COURT–MARTIAL LACKED JURISDICTION BECAUSE THE MILITARY JUDGE WAS DESIGNATED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION. SUPPLEMENTAL ISSUE III. THE COURT–MARTIAL HAD NO JURISDICTION BECAUSE THE MILITARY JUDGE'S LACK OF A FIXED TERM OF OFFICE LEFT THE MILITARY JUDGE INSUFFICIENTLY INDEPENDENT TO SATISFY THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE. *But see United States v. Graf*, 32 M.J. 809 (N.M.C.M.R. 1990), *petition granted*, 34 M.J. 169 (C.M.A. 1991). BECAUSE THE ERROR IS JURISDICTIONAL AND THE RECORD CONTAINS NO EVIDENCE OF A *KNOWING* WAIVER OF APPELLANT'S RIGHT TO AN INDEPENDENT MILITARY JUDGE, THE ISSUE IS NOT WAIVED EVEN THOUGH IT WAS NOT RAISED AT TRIAL.

■ Courts of Military Review must obey implicitly the mandates of the Court of Military Appeals. *United States v. Renfroe*, 3 M.J. 790 (A.C.M.R.1977), *pet. denied*, 4 M.J. 12 (C.M.A.1977) (cited with approval in *United States v. Montesinos*, 28 M.J. 38 (C.M.A.1989)). When a case is remanded to a Court of Military Review in limited terms, the Court of Military Review by clear implication must confine its review to matters within those limitations. The scope of review on remand will be interpreted closely. The scope of review on remand is determined on the basis of the qualifying terms of the remand order, and not based on the use of standard decretal terms, such as the "the judgment is vacated," "vacated and remanded," or "the decision is set aside." *Renfroe*, 3 M.J. at 793. "Except that which we are mandated to review, our previous rulings are the law of the case and will not now be reconsidered." *Id.* (quoting *Gradsky v. United States*, 376 F.2d 993 (5th Cir.), *cert. denied sub nom. Grene v. United States*, 389 U.S. 908, 88 S.Ct. 224, 19 L.Ed.2d 224 (1967)). *See also United States v. Lee*, 30 C.M.R. 684 (N.B.R.1960); *United States v. Valenzuela*, 22 C.M.R. 454 (A.B.R.1956), *pet. denied*, 7 C.M.A. 794, 23 C.M.R. 421 (1956). In sum, a remand for a particular purpose does not entitle an appellant to litigate issues outside the purpose or scope of the remand.

■ The Supreme Court remanded appellant's case for further consideration in light of *Minnick*. The Court of Military Appeals considered "it appropriate, in the first instance, that the Court of Military Review should have the initial opportunity to review this case in light of *Minnick*." *United States v. Jordan*, 32 M.J. at 376. Accordingly, our charter is to review the appellant's Fifth Amendment challenge to the admissibility of his confessions in light of *Minnick*, not to review an independent challenge based upon other regulatory requirements unaffected by *Minnick* or to review wholly unrelated issues. *Cf. Johnson v. Board of Education of Chicago*, 457 U.S. 52, 102 S.Ct. 2223, 72 L.Ed.2d 668 (1982). Therefore, the previous decisions of this Court and the Court of Military Appeals as to the Mil.R.Evid. 305(e) challenge remain the law of the case.[7]

■ In any case, we are not inclined to disturb our previous decision in respect to the Mil.R.Evid. 305(e) challenge. The civilian police would have a duty to notify counsel of the intended interrogation under Mil.R.Evid. 305(e) only if they were acting as a knowing agent of a military unit or a person subject to the Code. Mil.R.Evid. 305(b)(1), (e). Mil.R.Evid. 305 applies to domestic non-military investigations on the basis of agency. Presence, participation, and cooperation of NIS are not themselves determinative. They are only factors to be considered in determining whether the civilian police were acting as agents of the military. Absent a subterfuge or an attempt at deliberate evasion of the rule, civilian interrogators are not agents of the military unless in some way they are under the direction or control of the military. *See United States v. Aau*, 12 C.M.A. 332, 30 C.M.R. 332 (1961) (civilian police were not agents of the military by virtue of an agreement to cooperate); *United States v. Holder*, 10 C.M.A. 448, 28 C.M.R. 14 (1959) (*cited with approval in United States v. Temperley*, 22 C.M.A. 383, 47 C.M.R. 235 (1973) (FBI agents were not agents of the military, even as to military offense, because the military exercised no control or direction over them)).[8]

■ There is no evidence of a subterfuge or an attempt to evade the rule. The

---

7. On 28 April 1992, we granted the appellant's motion to raise supplemental assignments of error. These assignments of error are unquestionably beyond the scope of the remand, and therefore we countermand our granting of that motion. In any case, these additional assignments of error are without merit. *Cf. United States v. Watkins*, 35 M.J. 709 (N.M.C.M.R. 1992); *United States v. Coffman*, 35 M.J. 591 (N.M.C.M.R.1992) (per curiam); *United States v. Graf*, 32 M.J. 809 (N.M.C.M.R.1990), *petition granted*, 34 M.J. 169 (C.M.A.1991); *United States v. Lowry*, 33 M.J. 1035 (N.M.C.M.R.1991).

8. We do not believe the *Holder/Aau*-direction/control test was abandoned for determining agency in *United States v. Penn*, 18 C.M.A. 194, 39 C.M.R. 194, 199 (1969).

civilian interrogators were not in some way under the direction or control of the military. Additionally, the record amply supports the conclusion that the civilian authorities were acting in furtherance of their own independent investigation and were not otherwise instruments of the military. Record at 50, 54, 60, 63, 64, 70–72, 75, 77, 80–81, 83–84, 94, 97, 99, 103, 116. *See United States v. Penn,* 18 C.M.A. 194, 39 C.M.R. 194 (1969) (independent investigation by secret service did not require Art. 31(b), UCMJ warnings); *United States v. Lonetree,* 31 M.J. 849 (N.M.C.M.R.1990), *petition granted,* 32 M.J. 460 (C.M.A.1991) (independent investigation by U.S. Intelligence agents did not require Art. 31(b), UCMJ warnings). It is true an NIS agent was present at the first of the two civilian interrogations, and the caption on the transcript of the interview states the interview was by the civilian detective and the NIS agent. However, the civilian police took delivery of the appellant pursuant to their own arrest warrant and Article 14(a), UCMJ, 10 U.S.C. § 814(a). Record at 75–76. At the time the civilian police took delivery of the appellant, military charges had not been preferred against the appellant, and it appeared the civilian authorities had prosecutorial jurisdiction.[9] The interrogation was conducted by the civilian detective on his own turf. The NIS agent asked no questions, and the civilian detective expressly disclaimed conducting the interrogation on behalf of NIS. Record at 80–81. The NIS agent was not present for the second interrogation. In sum, we would conclude the civilian police were not

acting as the agents of a military unit or of a person subject to the Code, and accordingly, Mil.R.Evid. 305 did not apply to them. The Fifth Amendment, *Miranda* and *Minnick* would, however, apply to them. We, therefore, pass then to the purpose of this remand—consideration of the impact of *Minnick* upon this case.

The appellant was appropriately advised of his *Miranda* rights, including his right to counsel prior to making the two disputed confessions. He executed a waiver of those rights. *Edwards* and *Minnick* apply to those situations wherein the accused has *invoked* his right to counsel. The record reflects and the parties on appeal all agree that the appellant at no time pertinent to these proceedings invoked before any interrogator, military or civilian, his right to counsel.[10] Record at 76, 92–94, 96, 99, 110–11, 116, 118, 121; Appellate Exhibits XII, XIV, XVIII, XXI. We do not infer from the fact that military authorities appointed military counsel while appellant was in the brig prior to transfer to the civilian authorities that the appellant had invoked his right to counsel. *Cf. McNeil; Burbine.* The appellant in effect suggests we read *Edwards* or *Minnick* to say that when an accused purports to waive his right to counsel and does not otherwise signal to an interrogator that he intends to deal with the authorities only through his counsel, the authorities are obliged to assume the contrary, to canvass attorneys with whom the accused may have had contact, and to give them notice of the interrogation. We read *Edwards, Minnick,* and *McNeil* precisely to the contrary.[11] The constitutional

---

9. *Supra* note 2.

10. After appellant made a verbal confession on 3 August 1985, there was a colloquy between the appellant and the interrogator respecting counsel. The interrogator attempted unsuccessfully to place the appellant in touch with an attorney named by the appellant. This appears to be the first time the appellant indicated in some way he was concerned about his representation. The colloquy was equivocal, and occurred after the appellant had made his tape-recorded admissions. The statement was thereafter transcribed and signed by the appellant. Record at 93, 96, 99. The Government relied on the verbal statements and did not offer the signed statement of the appellant. Record at 353–359.

11. *See also Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (waiver of Fifth Amendment right to counsel unaffected by the fact police did not inform accused an attorney was endeavoring to reach him and attorney-client relationship alone does not trigger Sixth Amendment right to counsel); *United States v. McDonald,* 9 M.J. 81 (C.M.A.1980) (Secret Service agent had no obligation to notify service-member's appointed military counsel of intent to interrogate accused on altered treasury check charge which was unrelated to drug offenses for which military counsel had been appointed).

requirements respecting the right to counsel announced in *Miranda* and *Edwards* are satisfied if the accused is informed of his rights under *Miranda*, voluntarily, knowingly and intelligently waives those rights, and does not otherwise, at a minimum, make within the context of custodial interrogation some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police or criminal investigators within the Armed Forces. Appellant made no such statement. Therefore, inasmuch as *Edwards* has no impact upon the appellant's case, neither does *Minnick*. If *Edwards* and *Minnick* are to be extended to require the police to give notice of an intended interrogation to any attorney with whom an accused may have consulted over a matter in the absence of an invocation by an accused of his right to counsel, such an extension is the province of a higher court. Accordingly, we conclude the appellant's assignment of error on remand is without merit, and we reaffirm our previous decision in his case.

Judge HOLDER concurs.*

FREYER, Senior Judge (concurring in part and concurring in the result):

I concur in all substantive aspects of Judge Mollison's opinion, but I do not concur in his restrictive interpretation of our mandate. This case was not sent back to us for a limited hearing while our initial affirmance was left intact; it was sent back for reconsideration after our previous decision was set aside. If, upon reconsideration, the current members of the panel entertained a reasonable doubt of the appellant's guilt or deemed the sentence inappropriate, should we, nevertheless, be compelled to affirm the findings and sentence, notwithstanding Article 66, 10 U.S.C. § 866, because to do otherwise would exceed our mandate? Similarly, I see no

obstacle to our reconsidering any other non-*Minnick* issues, such as the application of Military Rule of Evidence 305. Not only does the mandate not expressly limit our reconsideration to *Minnick* issues, but it also does not do so by operation of law, *cf.*, *United States v. Montesinos*, 28 M.J. 38 (C.M.A.1989), since the previous affirmance of the U.S. Court of Military Appeals was, itself, set aside by the order of the U.S. Supreme Court. It seems to me that the only way we could violate the mandate would be by refusing to consider the case in light of *Minnick v. Mississippi*. Consequently, I believe that our order permitting supplemental assignments of error was well within our discretion under the mandate.

Having said that, I agree that the consultation between the appellant and his lawyer, Lieutenant Stallings, however that lawyer came to be assigned, was not pursuant to the appellant's expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police and, hence, was not an exercise of his *Miranda* rights. In addition, I believe that, although the investigations conducted by the Naval Investigative Service and the City of Chesapeake did merge during the trip to Gaeta, they un-merged at the point where the City of Chesapeake assumed full prosecutorial jurisdiction and custody over the appellant and his accomplice pursuant to civilian arrest warrants shortly before the critical 31 July 1985 statement was taken from the appellant by Officer Griggs. I concur in affirming the findings of guilty and the sentence.

---

* Colonel Holder took final action on this case          prior to his retirement.