**UNITED STATES, Appellee,**

v.

**Spencer I. JORDAN, Airman
U.S. Navy, Appellant.**

**No. 58,976.**

**CMR No. 86 1006R.**

U.S. Court of Military Appeals.

Argued March 2, 1993.

Decided Sept. 30, 1993.

Certiorari Denied March 7, 1994.
See 114 S.Ct. 1217.

For Appellant: *Captain Dwight H. Sullivan*, USMC (argued); *Lieutenant Michael C. Pallesen*, JAGC, USNR.

For Appellee: *Lieutenant Commander Lawrence W. Muschamp*, JAGC, USN (argued); *Colonel T.G. Hess*, USMC and *Commander W.F. Shields*, JAGC, USN (on brief); *Captain A. Diaz*, USMC.

*Opinion of the Court*

COX, Judge:

Appellant was convicted of murdering a shipmate, and of robbing and conspiring to rob him.[1]  The murder and robbery occurred within the territorial limits of the City of Norfolk, Virginia; the body was dumped into a river within the territorial limits of the City of Chesapeake, Virginia. This case concerns admissibility of two statements made by appellant to law enforcement officials of those municipalities in conjunction with their investigations into appellant's crimes.

When this case was initially before us, on September 28, 1989, we affirmed, resolving numerous evidentiary questions against appellant regarding the two statements.  29 MJ 177.  On December 10, 1990, the United

---

**1.**  Appellant was convicted of violations of Articles 118, 122, and 81, Uniform Code of Military Justice, 10 USC §§ 918, 922, and 881, respective-  ly.  His approved sentence includes a dishonorable discharge, confinement for life, total forfeitures, and reduction to E–1.

States Supreme Court granted appellant's petition for *certiorari*, vacated our judgment, and remanded the case to us for further consideration in light of its then-new decision in *Minnick v. Mississippi*, 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (December 3, 1990). *Jordan v. United States*, 498 U.S. 1009, 111 S.Ct. 575, 112 L.Ed.2d 580.

We, in turn, set aside the decision of the Court of Military Review and remanded the case to it, noting that

> we have reexamined the decision of the United States Navy–Marine Corps Court of Military Review and our opinion in this case and consider it appropriate, in the first instance, that the Court of Military Review should have the initial opportunity to review this case in light of *Minnick.*

32 MJ 376 (1991).

On remand, the Court of Military Review again affirmed, holding that *Minnick* afforded appellant no relief. 35 MJ 856 (1992). We agree with the Court of Military Review, and we again affirm.

■ In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the Supreme Court ruled, *inter alia,* that the Fifth Amendment privilege against self-incrimination requires that a suspect in custody be clearly informed, prior to interrogation, that he has a right to remain silent and that anything he says may be used against him in court. In addition, the suspect must be clearly informed that he has a right to consult with counsel and to have counsel with him during the interrogation, and that, if he is indigent, an attorney will be appointed to represent him. 384 U.S. at 467–72, 86 S.Ct. at 1624–26.

Of particular significance to this appeal, the Court also stated:

> Once warnings have been given, the subsequent procedure is clear. *If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease.*

384 U.S. at 473–74, 86 S.Ct. at 1627–28 (emphasis added).

*Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), represented an extension of *Miranda*. In *Edwards*, the defendant was taken into custody and advised of his rights. At some point, Edwards indicated a willingness to "make a deal," but he wanted an attorney first. 451 U.S. at 479, 101 S.Ct. at 1882. Questioning ceased at this point, and Edwards was taken to the county jail for the night. The next morning, two different detectives went to the jail and readvised Edwards of his rights; Edwards eventually confessed, having seen no lawyer.

The Supreme Court held that

> *when an accused has invoked his right to have counsel present* during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, *having expressed his desire to deal with the police only through counsel,* is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversation with the police.

451 U.S. at 484–85, 101 S.Ct. at 1884–85 (emphasis added; footnote omitted).

*Minnick v. Mississippi, supra,* represents a clarification of *Edwards*. Minnick was questioned by police in jail; he also invoked his right to counsel. Thereafter, appointed counsel actually met with Minnick at the jail. Later, law enforcement officers returned, readvised Minnick of his rights, and Minnick confessed. 498 U.S. at 148–49, 111 S.Ct. at 488–89. The Supreme Court held that the officers could not, under the Fifth Amendment, "reinitiate interrogation" of Minnick unless Minnick's attorney was present. *Id.* at 153, 111 S.Ct. at 491. The fact that the attorney had seen Minnick did not remove the protections of *Miranda* and *Edwards*.

■ The facts of the instant case, however, differ significantly from those of *Minnick.* Here, despite numerous rights-advisements, appellant never invoked his right to counsel until after the statements in issue had been taken. *See* 29 MJ at 178–83. Notwithstanding this lack of invocation, Naval defense counsel was assigned to appellant while appellant was still under Naval control.[2] This appointment was apparently triggered by appellant's brief detention in a Navy brig pending completion of the civilian investigation. Naval counsel duly met with appellant at the brig just prior to service of the civilian arrest warrant. After this meeting, the civilian warrant was served, and appellant was released to the custody of civilian officials for the purpose of prosecution.

Appellant was subsequently advised of his Fifth Amendment *Miranda* rights by civilian officials. It is undisputed that appellant waived his rights and agreed to talk with the civilian law enforcement officials. In the course of those interrogations, he made the admissions here in issue. *At no time prior to or during the making of these statements did appellant ever invoke a right to counsel in any way to any official, Naval or civilian.* *See* 29 MJ at 188 and 35 MJ at 862. *Cf. Moran v. Burbine,* 475 U.S. 412, 422–23, 106 S.Ct. 1135, 1141–42, 89 L.Ed.2d 410 (1986). Each and every time appellant was advised of his rights, he waived them and agreed to make a statement. Thus, notwithstanding the Naval attorney's meeting with appellant at the brig, *Miranda, Edwards,* and *Minnick* were scrupulously honored. Under the circumstances, we agree with the Court of Military Review that *Minnick v. Mississippi, supra,* provides appellant no relief.

Regarding the other claims and theories raised by appellant in conjunction with this appeal, we are satisfied with our treatment of them in our first opinion and with their treatment by the Court of Military Review.

The decision of the United States Navy–Marine Corps Court of Military Review on further review is affirmed.

Judges CRAWFORD and GIERKE concur.

SULLIVAN, Chief Judge (dissenting):

I disagree with the holding of the majority opinion and its reliance on the Court of Military Review's decisions in this case: *United States v. Jordan,* 35 MJ 856 (1992); *United States v. Jordan,* (June 30, 1987) (unpublished). The Supreme Court remanded appellant's case to our Court "for further consideration in light of *Minnick v. Mississippi,* 498 U.S. 146," 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). *Jordan v. United States,* 498 U.S. 1009, 111 S.Ct. 575, 112 L.Ed.2d 580 (1990). We then remanded it to the Court of Military Review for the same purpose. *United States v. Jordan,* 32 MJ 376 (1991). Restatement by the Court of Military Review of its initial decision that appellant never asserted his Fifth Amendment right to counsel is unresponsive to this remand. After all, *Minnick v. Mississippi,* 498 U.S. 146, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990), is a decision which addresses whether the police may interrogate a suspect in custody outside the presence of counsel *after he has exercised his Fifth Amendment right to counsel* and briefly consulted that counsel. *Cf. Patterson v. Illinois,* 487 U.S. 285, 290–92, 108 S.Ct. 2389, 2390–92, 101 L.Ed.2d 261, 272–

---

**2.** Since the murder and robbery had been committed off-post, Naval jurisdiction over the offenses was not obvious at this critical juncture of the investigation, and military charges were not instituted at this point. *See O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). A few days later, after appellant had been released to the custody of civilian officials but not yet indicted, those officials obtained appellant's admission that the plot to rob the deceased was

hatched previously on board the Naval installation. This admission strengthened the argument for Naval jurisdiction, and the case was ultimately returned to the Navy for prosecution. Despite this additional evidence of "service connection," appellant's first pretrial motion was to dismiss the charges due to an alleged lack of subject-matter jurisdiction. The subject-matter jurisdiction debate was ultimately resolved by the Supreme Court in *Solorio v. United States,* 483 U.S. 435, 107 S.Ct. 2924, 97 L.Ed.2d 364 (1987).

72 (1988) (Supreme Court recognized suspect never exercised right to counsel).

The Court of Military Review's regressive approach to a Supreme Court remand is reminiscent of another military case remanded by the Supreme Court to this Court for reconsideration. *See United States v. Goodson*, 18 MJ 243 (CMA 1984), *cert. granted and decision vacated*, 471 U.S. 1063, 105 S.Ct. 2129, 85 L.Ed.2d 493 (1985), *remanded*, 22 MJ 22 (CMA 1986) (decision below reversed). There, this Court initially concluded that a suspect's request for counsel made prior to commencement of interrogation but while in custody did not bring *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), into play. In our second decision on remand, however, we discarded our earlier holding to the extent that it ignored an "anticipatory" invocation of counsel by a suspect in custody. *See McNeil v. Wisconsin*, 501 U.S. 171, —— n. 3, 111 S.Ct. 2204, 2211 n.3, 115 L.Ed.2d 158 (1991).

Turning to the present case, I note that a joint and continuous investigation of appellant for Petty Officer Swafford's murder had begun in April 1985, involving both Special Agent Cashman of the Naval Investigative Service and Detective Griggs of the Chesapeake Police Department. Moreover, appellant was placed in pretrial confinement for this offense by military authorities on July 28, 1985. Finally, I note that RCM 305(e), Manual for Courts-Martial, United States, 1984, provides:

(e) *Advice to the accused upon confinement. Each person confined shall be promptly informed of:*

(1) The nature of the offenses for which held;

(2) The right to remain silent and that any statement made by the person may be used against the person;

(3) The right to retain civilian counsel at no expense to the United States, and *the right to request assignment of military counsel;* and

(4) The procedures by which pretrial confinement will be reviewed.

(f) *Military counsel. If requested by the prisoner, military counsel shall be provided to the prisoner before the initial review under subsection (1) of this rule.* Counsel may be assigned for the limited purpose of representing the accused only during the pretrial confinement proceedings before charges are referred. If assignment is made for this limited purpose, the prisoner shall be so informed. Unless otherwise provided by regulations of the Secretary concerned, a prisoner does not have a right under this rule to have military counsel of the prisoner's own selection.

(Emphasis added.)

This Court made the following statement of facts concerning what happened next:

On July 28, appellant was ordered into pretrial confinement by military authorities. In the afternoon of July 30, Lieutenant Stephen A. Stallings, JAGC, USN, received notification that he had been appointed appellant's defense counsel. He met with appellant in the brig the next morning, July 31, for approximately 2 hours. He had already been informed that the civilian authorities might be taking jurisdiction in the case.

While Lieutenant Stallings was talking with appellant, Detective Griggs arrived at the brig with a Chesapeake warrant for appellant's arrest. After Stallings departed—he was unaware of Griggs' presence at the brig—the military authorities released appellant into Griggs' custody. Griggs knew appellant had a military attorney, but believed "that his military attorney had no authority off the military base once ... [Griggs] served those papers on" appellant. Military charges were not, at that time, preferred against appellant.

The same day, July 31, Griggs took appellant to Chesapeake police headquarters, where he advised him of his rights to remain silent and to counsel under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and the Fifth Amendment to the United States Constitution. Appellant waived his

rights and agreed to talk to Griggs without counsel present. Neither Griggs nor appellant mentioned Lieutenant Stallings.

Thereafter, Griggs interrogated appellant in a tape-recorded interview; the content of the interview was transcribed, and appellant swore under oath that it was a true statement. In this statement, appellant made [certain] admissions....

29 MJ 177, 181–82 (CMA 1989).

In my opinion, this record shows that appellant asserted his Fifth Amendment right to counsel while in custody but prior to actual interrogation. *See United States v. Goodson, supra.* Detective Griggs thus violated *Minnick v. Mississippi, supra,* when he interrogated appellant outside the presence of Lieutenant Stallings, his assigned military defense counsel. *See generally* W. LaFave and J. Israel, *Criminal Procedure* § 6.9(e) at 531–33 (1984).

It is not disputed in this case that appellant, when taken into custody for this murder offense, was apprised of his right to counsel. Moreover, counsel was assigned to him subsequent to this rights' advisement. He also formed an attorney-client relationship with this defense counsel and engaged in a 2–hour consultation with him *about this offense. See United States v. Porter,* 764 F.2d 1, 6 (1st Cir.1985) (suspect in custody asserted his right to counsel by making two phone calls to his attorney); *cf. Delap v. Dugger,* 890 F.2d 285, 291 (11th Cir.1989) (suspect only said lawyer represented him on another matter). Finally, Detective Griggs was fully apprised of this consultation and relationship as to this offense but disregarded it as irrelevant because of counsel's military status. *Id.; cf. Wernert v. Arn,* 819 F.2d 613, 616 (6th Cir.1987) (police not apprised of phone call attempting to contact her attorney).

In *Miranda,* the Supreme Court stated: Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. *If however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.*

384 U.S. at 444, 86 S.Ct. at 1612, 16 L.Ed.2d 694 (emphasis added). *See Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). Furthermore, in *Edwards,* the Supreme Court unequivocally held that once the accused requests counsel, all questioning must stop and he may not be approached for further interrogation "until counsel has been made available to him." 451 U.S. at 484–85, 101 S.Ct. at 1884–85. Finally, in *Minnick, a decision released after our initial opinion in this case,* the Supreme Court "decline[d] to remove protection from police-initiated questioning based on isolated consultations with counsel who is absent when the interrogation resumes." 498 U.S. at 154, 111 S.Ct. at 491.

The key to this case for me is *Minnick v. Mississippi, supra.* For the first time the Supreme Court held that the police may not reinitiate interrogation *outside the presence of counsel* after a suspect has asserted his Fifth Amendment right to counsel and briefly consulted with counsel. *See McNeil v. Wisconsin,* 501 U.S. at ——. 111 S.Ct. at 2208. This is the law even if the suspect is again advised of his rights and waives them. Although *Minnick v. Mississippi, supra,* was not decided at the time of my earlier opinion in this case, it is a bright-line rule which I cannot now ignore.

Accordingly, absent a determination of harmless error, *see Arizona v. Fulminante,* 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), I would order a rehearing.

WISS, Judge (dissenting):

Four years ago, a divided vote of this Court affirmed appellant's conviction in a three-opinion decision (Judges Cox, 29 MJ 177 (1989), and Sullivan, 29 MJ at 189,

affirming, and then-Chief Judge Everett dissenting, *id.* at 189). Subsequently, the Supreme Court of the United States granted Jordan's petition for writ of certiorari, "vacated" the "judgment" of this Court and remanded the case to this Court "for further consideration in light of [the intervening decision in] *Minnick v. Mississippi,* 498 U.S. 146," 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). 498 U.S. 1009, 111 S.Ct. 575, 112 L.Ed.2d 580.

This Court, in turn, decided that it was "appropriate, in the first instance, that the Court of Military Review should have the initial opportunity to review this case in light of *Minnick.*" Accordingly, this Court "set aside" the earlier decision of the court below and remanded the case "to that court for further review." 32 MJ 376 (1991).

Back in the Court of Military Review, some dispute arose concerning the scope of its review at that point. The court first granted appellant's motion to file additional errors of law; however, in its ultimate decision, 35 MJ 856, 861 n.7 (1992), the majority (Freyer, J., dissenting on this point—*id.* at 863) reversed its field and concluded that it "must confine its review to matters within" the limits of the remand from this Court. *Id.* at 861. The court noted that neither the Supreme Court nor this Court had questioned any aspect of its earlier review except as to how *Minnick* might affect its consideration. Accordingly, it concluded that its earlier decision and the original decision of this Court remained the law of the case, with that sole limitation.

In the remand order, this Court had instructed that, "[t]hereafter, the record will be returned directly to this Court." 32 MJ 376. Accordingly, after the Court of Military Review had issued its decision on remand, it was not necessary for appellant to petition for review. In lieu of that, this Court promulgated an order on September 21, 1992, vacating the earlier, erroneous docketing of this appeal (*see* 36 MJ 368 (Daily Journal, September 9, 1992)); giving notice that the record had been returned to the Clerk's office; and indicating that the case thus "has been referred to the Court for further consideration." 36 MJ 381 (Daily Journal). On October 19, 1992, this Court issued an order permitting appellant to "file an additional brief on or before November 30, 1992," and permitting appellee to "file an answer within 30 days thereafter." 37 MJ 22 (Daily Journal).

In appellant's brief filed in response to that invitation, he argued not only the Fifth Amendment/*Minnick* issue (Issue II in his brief) but also four others (Issues I, III, IV, and V). Those issues are as follows:

I

WHETHER MILITARY RULE OF EVIDENCE 305(e) COMPELS SUPPRESSION OF A CONFESSION OBTAINED WHERE A SERVICEMEMBER IS INTERROGATED BY A CIVILIAN DETECTIVE WHO HAS CONDUCTED A LENGTHY CO-INVESTIGATION WITH A NAVAL INVESTIGATIVE SERVICE AGENT, AND WHERE THAT NAVAL INVESTIGATIVE SERVICE AGENT IS PRESENT IN THE INTERROGATION ROOM.

III

WHETHER THE FORCE JUDGE ADVOCATE ERRED BY ADVISING THE CONVENING AUTHORITY THAT APPELLANT HAD BEEN CONVICTED OF A MURDER SPECIFICATION WHICH HAD ACTUALLY BEEN DISMISSED.

IV

WHETHER THE NAVY–MARINE CORPS COURT'S OPINION WAS VALID WHERE ONE OF THE THREE JUDGES ON THE PANEL HAD LEFT THE COURT BEFORE THE DECISION WAS ANNOUNCED.

V

WHETHER THE MILITARY JUDGE'S APPOINTMENT BY THE JUDGE ADVOCATE GENERAL VIOLATED THE APPOINTMENTS CLAUSE, THUS IN-

VALIDATING THE PROCEEDINGS WHICH RESULTED IN APPELLANT'S CONVICTION AND SENTENCE.

With the case in this posture, I believe that the predicate issue to our consideration of this appeal is the scope of our review: Specifically, is this Court's review limited to the *Minnick* issue that occasioned the remand from the Supreme Court; and, if so, is that limitation a mandatory one or, instead, one that is within the Court's discretion? I conclude that an appellate court to whom a case is remanded with clear instruction to reconsider in light of a particular case or issue generally *must* limit itself to that issue and consider its earlier decision the law of the case in other respects, *see United States v. Montesinos,* 28 MJ 38 (CMA 1989), but that other closely-related issues *may* be considered in the Court's *discretion* where the record is adequately developed to permit it, *see United States v. Sager,* 36 MJ 137 (CMA 1992). In my view, under this standard this Court can and should consider Issue I, concerning an alleged violation of Mil.R.Evid. 305(e), Manual for Courts–Martial, United States, 1984, but that we cannot consider the matters raised in Issues III, IV, and V.

Moving, then, to the merits of the appeal, I agree with the majority that, as to the *Minnick* issue, there is no evidence in the record that appellant triggered his Fifth Amendment right to counsel by requesting a lawyer in any way. However, I believe that the more protective Mil.R.Evid. 305(e) was violated here: The military and civilian investigations had merged early on and had continued, not on "parallel tracks" as the Government suggests but, instead, on the *same train and on the same track.* Accordingly, Agent Cashman of the Naval Investigative Service had an obligation to ensure the presence of appellant's military defense counsel during the interrogation in issue by Detective Griggs and, further,

that the second civilian interrogation was the poisoned fruit of that first one.

I

'As I mentioned earlier, the threshhold question in this Court relates to the scope of review. The Court of Military Review first granted appellant's motion on remand to consider issues other than the *Minnick* issue cited in our remand order; then, however, in its opinion, the majority concluded that any non *Minnick* issue was outside the legally permissible scope of its review under this Court's order and that, except for the *Minnick* issue, the decisions of that court and this one were the law of the case.* The majority of that court, though, gratuitously opined that its earlier decision on the Mil.R.Evid. 305 issue would not change, in any event, and explained its reasoning. Judge Freyer disagreed and concluded that, since this Court had "set aside" the Court of Military Review's original decision, that court had the authority to fully review the case before it.

Appellant cites *Creighton v. Anderson,* 922 F.2d 443, 449 (8th Cir.1990), to support his assertion that the limitation by the court below on its scope of review was erroneous. That opinion, indeed, does contain some sweeping language to the effect that a "vacated" opinion simply does not exist in legal effect. Notwithstanding, certain analogies suggest to the contrary *where the vacation order is not, in context, unlimited.*

For instance, 5 Am Jur 2d, Appeal and Error § 947 at 374, states: "The modification of a judgment, or its reversal in part, as distinguished from an absolute and unqualified reversal, does not obliterate the original judgment...." Further, § 953 of the same volume and subject instructs:

In a proper case where the error relates only to separable issues covered by the judgment, it may be reversed as to

---

* As to the other, non-*Minnick* issues raised by appellant in this Court, the majority expresses its satisfaction "with their treatment by the Court of Military Review." 38 MJ at 348. I am unsure whether this means that the majority agrees with the court below that they could not consider those issues or whether it means that the majority concludes that there is no merit to them.

those issues without reversing the judgment in its entirety. The unaffected parts must be deemed a final judgment of the facts and rights which they determine. There may, however, be cases of appeal from a part of a judgment where the part appealed from is so interwoven and connected with the remainder, or so dependent thereon, that the appeal affects the other parts or involves a consideration of the whole, and is really an appeal from the whole; in such case, if a reversal is ordered it should extend to the entire judgment. The appellate court in these cases has power to do that which justice requires, and may extend its reversal as far as may be necessary to accomplish that end.

(Footnotes omitted.) *See also id.* § 964 ("When error exists as to only one or more issues and the judgment is in other respects free from error, a reviewing court may, when remanding the cause for a new trial, whether by the court or a jury, limit the new trial to the issues affected by the error" where such limitation is possible and will not work an injustice because the issues to be tried are separable from the other issues.).

These analogies accurately reflect this Court's general position on the question taken in *United States v. Montesinos, supra.* At several points in that opinion, this Court used rather strong language to, I suggest, make the following points: First, reviewing authorities in the military justice system have their full statutory powers as a case moves *up* the statutory ladder of review; second, however, if the case ever has to move *down,* those authorities have only the power that is expressly given it by the higher authority. For example, the Court stated at one point: "If this Court remands a case to the Court of Military Review, that court can only take action that conforms to the limitations and conditions prescribed by the remand." 28 MJ at 44.

Accordingly, I believe that the general principle may be stated thus: A vacation normally obliterates the earlier decision be-

low; however, where the *context* of that vacation or set aside clearly *limits* the purpose for the remand, that purpose restricts the legal power of the lower authority.

The single exception to this principle of restriction would appear to be that suggested in the excerpt from § 953 above, which this Court did expressly follow in *United States v. Sager,* 36 MJ at 140–41. There, the granted issue questioned admissibility of evidence in light of Article 31, Uniform Code of Military Justice, 10 USC § 831. However, the Court noted that, of the four other theories urged in appellant's brief (*i.e.,* Mil.R.Evid. 305, Fifth Amendment, etc.), several were encompassed within appellant's trial objection. Deciding to consider and resolve *all* of the closely related issues, the Court observed:

Arguably, all of the above arguments fit somewhere within defense counsel's initial objections at his court-martial. Moreover, the evidence of record is adequate to decide these questions, although neither the judge at trial nor the Court of Military Review can be faulted for failing to address specific objections not particularly raised before them.....

36 MJ at 141.

Applied to the remand orders in this case, the general principle would seem to limit the scope of review, both in the Court of Military Review and in this Court, to the *Minnick* issue. While the Supreme Court used the verb "vacated" and this Court used the verb "set aside," in context it is ineluctably clear that the purpose of each remand was limited, that is: to further consider the case "in light of *Minnick v. Mississippi.*"

The sole caveat to that principle, however, would seem to suggest that, in light of a number of unusual factors, it is permissible and appropriate for this Court to review the first issue raised by appellant, which addresses the question whether his right to presence of counsel under Mil.R.Evid. 305(e) was violated. First, and most importantly, the issue is closely related to the *Minnick* issue, *see United States v. Sager,* 36 MJ at 140–41; indeed, the Government

candidly acknowledges in its brief (Answer to Final Brief at 36 n.16) that the Mil. R.Evid. 305 issue actually was part of the issue originally granted review in this case and that Chief Judge Everett actually was the one who treated it as a Fifth Amendment issue. Moreover, the first opinion of this Court was sharply divided; since then, this Court has expanded from three to five judges, with the concurrent possibility going into our deliberations that the Court might well reach a different conclusion on that issue. Finally, it cannot be gainsaid that the apparent importance (and potential merit) of the issue is substantial.

By contrast, however, Issues III, IV, and V are wholly unrelated to the purpose of the remand from the Supreme Court or this Court's remand to the Court of Military Review. Accordingly, they cannot—and, in any event, they should not—be further considered; appellant already has had his full statutorily-envisioned appellate review of his court-martial, with the single remaining task being to resolve the *Minnick* and *Minnick*-related issues.

## II

### *Minnick Issue*

Justice Kennedy wrote for the majority in *Minnick*. He first reminded us that the Court in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), had held that an accused in custody who had invoked his Fifth Amendment right to counsel may not be approached for further interrogation " 'until counsel has been made available' to him." 498 U.S. at 147, 111 S.Ct. at 488. Justice Kennedy continued that the Court believed a fair reading of *Edwards* and its progeny is that the bar to further police-initiated questioning exists unless counsel actually is *with* the accused during the subsequent questioning. In any event, the Court continued:

> Whatever the ambiguities of our earlier cases on this point, we now hold that when counsel is requested, interrogation must cease, and officials may not reinitiate interrogation without counsel pres-

ent, whether or not the accused has consulted with his attorney.

498 U.S. at 153, 111 S.Ct. at 491.

*Minnick*, however, did nothing to the preexisting law that the *trigger* for *any* of these protections is a *request* for counsel. The Court in *McNeil v. Wisconsin*, 501 U.S. 171, ——, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1990), made clear that, in order to constitute such a request, the Fifth Amendment "requires, at a minimum, some statement that can reasonably be construed to be expression of a desire for the assistance of an attorney *in dealing with custodial interrogation by the police.*"

*There is no direct evidence* that appellant requested Fifth Amendment counsel at *any* time. Indeed, prior to every interrogation, he waived his rights. As to precisely how Lieutenant Stallings actually got into the case at the RCM 305–hearing stage, he testified that he was told by his superior in the defense office that he had "been appointed to represent Spencer Jordan in ... the charge of the alleged murder...." There is no evidence as to *who* had assigned Stallings (for instance, the staff judge advocate did not know about it— *Stallings* told *him* about the assignment); what "assigned" *meant* (*see* the *McNeil* discussion, *infra* ); or what had *triggered* that "assignment" (*i.e.*, a request from Jordan).

Instead, to fill the void in direct evidence, appellant relies upon two theories to meet this requirement that he must in some manner request a lawyer in order to trigger the *Minnick* right; both reflect theories raised by the *Jordan I* dissent.

First: RCM 305(f), Manual, *supra*, provides that, *"[i]f requested by the prisoner*, military counsel shall be provided to the prisoner before the initial [pretrial confinement] review under ... this rule" (emphasis added); from this, counsel asserts that, since defense counsel was in fact provided Jordan, he must have *requested* it, assuming regularity and compliance with regulations. The flaw in this logic is that the inferred conclusion (that Jordan requested counsel) does not necessarily flow from the

premise (the rule). RCM 305(f) does require counsel if the prisoner requests; it does *not*, however, *limit* the occasion on which counsel might be provided. Thus, the fact that counsel *is* provided for RCM 305 purposes, without more, does not ineluctably lead to the conclusion that Jordan *requested* him.

As a tangent to this theory, Chief Judge Everett in his *Jordan I* dissent—after inferring that Jordan had requested counsel—speculated:

> Even if the request for counsel had been made only with respect to review of pretrial confinement, I believe that it would constitute a request for counsel within the meaning of *Edwards*. ... By his request—whatever its form—Jordan made clear his state of mind that, in connection with the murder investigation and any related proceedings, he wished to have the assistance of a lawyer.

29 MJ at 191.

After that was written, however, the Supreme Court decided *McNeil*, in which the Court held that, just because a *Sixth* Amendment counsel is requested (there, a counsel to help him at a bail hearing, similar to our RCM 305 hearing, coincidentally enough), the accused is *not* necessarily signaling a state of mind that he needs a lawyer as a buffer during interrogation so as to give rise to a *Fifth* Amendment right to counsel. Thus, *McNeil* indicates that, even *if* Jordan had asked for an RCM 305 counsel, he did *not* thereby invoke his *Fifth Amendment* right to counsel.

Second: Counsel next argues that the "assignment" of Stallings and Jordan's acceptance of his services constitute the "functional equivalent" of a request for counsel so that *Minnick* is triggered. In other words, if the police know that a suspect in custody actually has consulted with a lawyer, that triggers *Minnick's* instruction that counsel must be present before interrogation. The flaw in this theory simply is that the Supreme Court has never said that; indeed, the *McNeil* decision clearly would suggest to the contrary. *Cf. United States v. Sager, supra; Moran v.*

*Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (where, unbeknownst to accused, lawyer was hired for accused by someone else, police did not deprive accused of his Fifth Amendment right by continuing questioning rather than letting lawyer in—accused had not asked for a lawyer).

Furthermore, while appellant's argument might be sensible *after* a Sixth Amendment right arises, it makes no sense *prior* to that time. It is not unreasonable to require an in-custody suspect, at a point *before* the Sixth Amendment right arises, to *say* he wants a lawyer before that questioning must stop.

Thus, in the absence of any evidence—direct or inferential—that appellant ever requested Fifth Amendment counsel, I believe that his rights under that provision were not violated.

### *Mil.R.Evid. 305(e) Issue*

In *United States v. McOmber*, 1 MJ 380 (1976), this Court confronted a case in which "the concern is whether an attorney once appointed or retained to represent a military suspect must first be contacted by investigators who have notice of such representation when they wish to question the suspect." *Id.* at 382. Of course, if the attorney is in the case because the suspect has invoked his Fifth Amendment right, *Minnick* now says yes; otherwise, though, the question is viable. This Court answered:

> We therefore hold that once an investigator is on notice that an attorney has undertaken to represent an individual in a military criminal investigation, further questioning of the accused without affording counsel reasonable opportunity to be present renders any statement obtained involuntary under Article 31(d) of the Uniform Code.

We reasoned:

> To permit an investigator, through whatever device, to persuade the accused to forfeit the assistance of his appointed attorney outside the presence of counsel

would utterly defeat the congressional purpose of assuring military defendants effective legal representation without expense. Article 27, . . . .

1 MJ at 383.

When the Military Rules of Evidence were written, Mil.R.Evid. 305 was drafted to conform to *McOmber's* interpretation—*see* Drafters' Analysis, Manual for Courts–Martial, United States, 1969 (Revised edition) at A18–28 (Change 3) (1980)—and application of Articles 27 and 31. Mil.R.Evid. 305(e) provides:

> When a person subject to the code who is required to give warnings under subdivision (c) intends to question an accused or person suspected of an offense and knows or reasonably should know that counsel either has been appointed for or retained by the accused or suspect with respect to that offense, the counsel must be notified of the intended interrogation and given a reasonable time in which to attend before the interrogation may proceed.

This Court has held that "a person subject to the code" includes not just the obvious but also civilian investigators "[w]hen the scope and character of the cooperative efforts demonstrate 'that the two investigations merged into an indivisible entity.'" *United States v. Quillen*, 27 MJ 312, 314 (CMA 1988), quoting *United States v. Swift*, 17 USCMA 227, 232, 38 CMR 25, 30 (1967).

Thus, the critical question is: Under all the circumstances of the case, did the civilian investigation by Detective Griggs and the military investigation by NIS Agent Cashman into the murder of the victim "merge[ ] into an indivisible entity"? I believe that it did. As the dissent in *Jordan I* recognized, "[T]he statement made on July 31 to Detective Griggs of the Chesapeake Police Department was the product of a lengthy joint investigation in which Griggs had been engaged with Special Agent Cashman of the Naval Investigative Service (NIS)." 29 MJ at 189. Indeed, as Cashman himself acknowledged, he and the Chesapeake police "were running a co-investigation, or an investigation in concert."

This is the state of the record: Cashman acknowledged that the NIS and the Chesapeake Police Department pooled information. Consistently, Griggs agreed that he and Cashman worked "very closely." Early in the investigation, the two even traveled to Italy together to interview a number of military members. Their team effort at interviews continued on their return to the United States, where they together interviewed appellant several times over the course of their investigation. Indeed, a transcript of a 2–hour interview of appellant on May 3, 1985, which was admitted as an appellate exhibit at trial, removes any doubt that Griggs and Cashman—the civilian police and the NIS—performed as a team during this investigation.

Further indication of this is: The Chesapeake Police conducted a polygraph examination of a military witness at the Navy's request. *See generally United States v. Aau*, 12 USCMA 332, 338, 30 CMR 332, 338 (1961)(civilian police is "instrument" of the military if there is a "request by the military that [the civilian police] act for it").

Yet even more indication is: When appellant returned to the United States from Israel, Cashman and Griggs were awaiting him, together, at the airport. During the following 2 days, Cashman and Griggs, together, made 2 trips to the vicinity that appellant had identified as the murder scene. The rights' waivers that appellant exercised during this period of time were witnessed, again, by both Cashman and Griggs. On the morning when Griggs served the civilian arrest warrant on appellant at the Norfolk brig, Cashman was there. During the subsequent interview by Griggs at the Chesapeake Police Department interrogation room, Cashman was there. Tellingly, the transcript of appellant's July 31 statement itself is titled: "INTERVIEW OF SPENCER ISSAK JORDAN ... BY: DETECTIVE C.S. GRIGGS, AND BRIAN CASHMAN, SPECIAL AGENT, NIS."

Even Senior Judge Freyer in his separate opinion in the Court of Military Review found the efforts of these two law enforcement officers had "merge[d]" but had become "un-merged at the point where the City of Chesapeake assumed full prosecutorial jurisdiction and custody over the appellant and his accomplice pursuant to civilian arrest warrants shortly before the critical 31 July 1985 statement was taken from the appellant by Officer Griggs." 35 MJ at 863. If so, then one might ask why Agent Cashman still was *present* at all subsequent interrogations. If, as the Government contends, Griggs merely permitted Cashman to be present, the question remains why *Cashman wanted* to be present if it was so clear at that point that the *military* involvement in this unified investigation was over.

*Independent* investigations, whether by Federal or local authorities, will not trigger Mil.R.Evid. 305(e). *See United States v. Lonetree*, 35 MJ 396 (CMA 1992), *cert. denied*, — U.S. —, 113 S.Ct. 1813, 123 L.Ed.2d 444 (1993). The same is true if the military agent merely is present or along for the ride. That is *not* true, though, where both the civilian and the military agents are actively investigating *together* at virtually every juncture. From the start, this was *one* investigation, and it continued as one, even at the point when Virginia authorities believed that they would assert jurisdiction (witness Agent Cashman continuing thereafter to be part of civilian interrogations). As such, I am satisfied that it was error for Griggs to interview appellant on July 31 without the presence of Lieutenant Stallings. Mil. R.Evid. 305(b)(1), (c), and (e); *United States v. McOmber*, 1 MJ 380 (CMA 1976).

III

On the basis of this reasoning, I would hold that appellant's Fifth Amendment rights were not transgressed during this investigation but that his right to the presence of his military defense counsel at the July 31 interview under Mil.R.Evid. 305 was violated. Accordingly, I would reverse the 1992 decision below and authorize a rehearing, *sans* the tainted evidence.